No. 86.—BENJAMIN S. JORDAN, plaintiff in error, *vs.* BENJAMIN G. THORNTON, *et al.* defendants.

[1.] A testatrix bequeathed as follows: " I give and bequeath to my son, Anthony R. Thornton, a negro woman named Pat, and her child named Albert, and all the further increase of said Pat, in trust, for the use and benefit of Mary G. Thornton, wife of my son, Benjamin H. Thornton, during her natural life; and after her decease, for the use of their children, now living, or which may hereafter be born to them, and their heirs forever:" *Held*, that upon the death of the tenant for life, the trust was executed, and the children were absolute owners of the property.

[2.] The assent of an executor to a legacy, may be implied from the possession of the property by the legatee, and assent given to a tenant for life, will enure to the benefit of the remainder-man *in fee.*

[3.] The Statute of Limitations does not run against minors.

[4.] If one of two or more tenants in common, in an action of trover, be barred by the Statute of Limitations, and one or more be within an exception in the Statute, their exemption will not relieve against the operation of the Statute, as to that one barred; and those within the exception will recover their several interests in the property, notwithstanding the bar of that one not within it.

[5.] If property belonging to an infant, is converted during his minority, the Statute will commence to run against him, upon his arrival at full age, in favor of the *tort feasor*, and those who claim under him, notwithstanding the property be removed without the jurisdiction of the State, unless prevented by some one exception in the Statute, as the non-residence of the *tort feasor*.

Trover, in Baldwin Superior Court. Tried before Judge MERRIWETHER, August Term, 1849.

Benjamin G. Thornton, and three others, children of Mary H. Thornton, she being dead, commenced an action of trover, for a negro, against Benjamin S. Jordan. On the trial, the will of Mildred Dudley was offered in evidence, by which the negro in dispute was bequeathed to " Anthony R. Thornton, in trust, for the use and benefit of Mary H. Thornton, during her natural life; and after her decease, for the use of her children, then living, or which may hereafter be born, and their heirs, forever." The defendant's counsel objected, because the trust was not executed in the plaintiffs, so as to enable them to maintain trover. The Court overruled the objection, and this is the first question to be adjudicated by this Court.

It appeared from the evidence, that the negro had been in the possession of Warren Jordan; and in 1839, was, by him, mortgaged, with others, to the Georgia Rail Road & Banking Company. Subsequently, the negro was run off into the State of Florida, and there remained until 1845, when he was brought back to Georgia. Two of the plaintiffs arrived of age while the negro was in the State of Florida—one in 1840, and the other in 1842.

One of them was a minor when the suit was commenced, and the remaining one was of age at the time of the conversion by Warren Jordan.

There being no direct proof of the assent of the executor, to the legacy to the remainder-men, the defendant moved a nonsuit. The Court overruled the motion, holding that the possession of the negro by the tenant for life, and subsequently, by a portion of the remainder-men, was evidence from which assent might be implied. This decision is also appealed to this Court.

To the charge of the Court, the following errors are assigned :

1st. In charging, that if any of the plaintiffs were infants, at the time of the conversion, the Statute did not run against them until their arrival at the age of twenty-one years.

2d. In charging, that if any of the plaintiffs were under age, at the time of the removal of the property from the State, the Statute did not commence running against them until the property was brought back; and that it did not depend on the residence or removal of the defendant, or those under whom he claimed.

3d. In charging, that if one or more of the plaintiffs were

barred, and the others not, those not barred could recover the amount of their interests.

McDONALD, for plaintiff in error, cited—

2 *Leigh*, 852, '3.   13 *Com. Law R.* 464.   *Hill on Trustees*, 253.   *Wynn vs. Lee*, 5 *Ga. R.* 217.   *Bal. on Lim.* 97.   *Angell*, 297.   3 *Murphy's R.* 577.   7 *Cranch*, 156.   4 *Term*, 516.

A. REESE, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The testatrix bequeathed the negro man Albert, (the property in litigation,) in the following terms : " I give and bequeath to my son, Anthony R. Thornton, a negro woman named Pat, and her child named Albert, and all the future increase of said Pat, in *trust*, as aforesaid, for the use and benefit of Mary H. Thornton, wife of my son Benjamin G. Thornton, during her natural life ; and after her decease, for the use of their children now living, or which may hereafter be born to them, and their heirs forever." The property, (Albert,) went into possession of the tenant for life, who died, leaving the plaintiffs, her children. There was some evidence that he was in possession of the plaintiffs, after the decease of their mother. He, however, passed, says the evidence, into the hands of Warren Jordan, who, in 1839, mortgaged him to the Georgia Rail Road & Banking Co. He was shortly afterwards taken to Florida, and there sold under the mortgage. In 1845, he was brought back to this State, and bought by the defendant, Benjamin S. Jordan. The plaintiffs claiming under the will of Mrs. Dudley, above recited, brought their action of trover for him, against Benjamin S. Jordan.

The plaintiff in error claims that the presiding Judge erred in ruling that the trust under the will, was executed, and that the plaintiffs, the tenant for life being dead, 'could sue in their own right, insisting that the trust still subsists, and that the action ought to have been brought in the name of the trustee. The limitations in this will are clearly an estate for life in Mrs. Thornton, with remainder in fee to her and her then husband's

children, then in life, or afterwards to be born. Upon the death of the tenant for life, the trust ceased, and the property belonged absolutely to the remainder-men. There was nothing *then* to be done by the trustee ; the law cast the fee upon the children, and they, if of age, were entitled to the possession, and if not, their guardian was. No conveyance of the legal estate by the *trustee*, is required by the will; it passed, by operation of law, upon delivery. We find no objection to the ruling of the Court on this point.

[2.] It was farther claimed before the Court below, that there was no assent to the legacy, by the executor, proven ; and therefore, the plaintiffs had no right of action. The Court held, that assent might be implied from possession ; and as there was some evidence of possession, both in the tenant for life and in the plaintiffs, after her death, he left that question to the Jury. And this view of the case we affirm. Assent to a legacy is necessary to enable a legatee to sue at law for his legacy. It is not necessary to show an express assent ; it may be implied from facts and circumstances. The assent, it is true, must be clear and unambiguous. The possession of the property willed, does make out a clear case of assent, by implication. .2 *Williams' Ex'rs*, 986. *Mathews on Presumptions*, 267. 3 *Preston's Abstr*. 145, 2 *ed*. 1 *Adol. & Ell*. 52, *S. C*. 3 *Nev. & M*. 325.

It was not necessary, in this case, to prove the assent of the executor to the remainder-men, because his assent to the interest of the tenant for life, will enure to vest theirs, and *e converso*, the particular estate, and the remainder constituting but one estate. *Welcden vs. Elkinton, Plowd*. 521. *Lampet's case*, 10 *Coke*, 47, *b* 6. *Adams vs. Pierce*, 3 *P. Williams*, 12. *Wentw. Offi. Ex'rs*. 426, 14 *ed. Com. Dig. Admin. c*. 6. 2 *Williams' Ex'r*, 895.

The presiding Judge instructed the Jury, that if any one of the plaintiffs was under age, at the time of the conversion, the Statute of Limitations did not run against such an one, until his or her arrival at twenty-one years of age ; and this instruction is assigned for error.

He also instructed the Jury, that if the Statute of Limitations barred the claim of any one or more of the plaintiffs, and did not bar the others, those not barred were entitled to recover their interest in the property, which is also assigned for error.

Jordan *vs.* Thornton and others.

[3.] These two assignments may be considered together. I see no hook to hang a doubt upon, about the first of these instructions. Infants may sue by a proper representative, before maturity, for a conversion, and the Statute may have run the whole term, beginning at the conversion, before suit is brought; and if no plea of the Statute is filed, they will not be affected by it; and if a plea is filed, they have but to reply their infancy, and then they will not be affected by it. Infants are protected by an express exception in the Statute, and they avail themselves of it by replication. · *Angell on Limitations*, 205, '6.   2 *Saund.* 117, 215. As to the second of these two assignments, there is some doubt; and the authorities are conflicting. This is an action of trover by several plaintiffs, claiming under a will for the recovery of a slave. The Statute of Limitations is pleaded, to which *infancy* is replied. Upon the trial, it was found that one or more of the plaintiffs were not within the saving in the Statute of Infancy. One or more are barred, either being of age at the time the right of action accrued, or being then minors, not having sued within the time prescribed, after arriving at maturity. But one of the plaintiffs is within the saving of the Statute, being at the time of instituting the suit, an *infant*. Now, the rule, as stated by the Court, is, that if one or more of the plaintiffs be barred, yet that bar does not affect the right of that one not barred, but within the saving; and that that one is entitled to recover in this suit, his or her proportion of interest in the property. The rule is claimed by the *plaintiffs in error*, to be the contrary; and that if one or more of parties plaintiffs, having a common interest in property, are barred by the Statute, the others are thereby barred, although within the saving of the Statute, and cannot recover their interest in the property. Such is the question, more carefully stated.

It has been held, that if one of two or more plaintiffs are within an exception in the Statute, the disability of that one will help the others and save them from the operation of the Statute. 1 *N. & McC.* 298.  1 *Bailey*, 192.   We do not so hold.   See *Rowe vs. Dowlston*, 2 *Taunt.* 440.

[4.] But we do hold, with the Circuit Court, that one or more of such parties plaintiffs, being barred, does not bar others who are within the saving of the Statute; and that in this case the infant plaintiff is entitled to recover her proportion of the value of the slave Albert.

These plaintiffs all claim title under the will, and are tenants in common. Their *interest* in the property is several, and although they may join in a suit for the common property, yet they may sue severally for their respective interests in it. The action of trover is for damages, and the damages may be recovered severally. So, also, when they sue jointly, the damages may be apportioned; the Jury may give damages according to the title proven in the plaintiffs. These positions are to be noted as having a material bearing upon the question. *Henry et al. vs. the Ex'rs of Means*, 2 *Hill's* S. C. R. 334. *Starnes & Paine vs. Quin*, 6 *Ga. R.* 84, and *authorities there cited*.

If this question depends upon a construction of the Statute of Georgia, then I am very sure that there can be no doubt about it. If, by that construction, one of the plaintiffs in this suit is protected, notwithstanding others are barred, that one will be protected, although decisions at Common Law are to the contrary; for, if there be such a rule of the *Common Law*, our Statute repeals it. I have no hesitation in saying that the privilege of infancy, under the exceptions in our Statute, is a *personal privilege*, and applies to each individual coming within it. The words of the Act are very plain : "If any *person* or *persons*, that is or shall be entitled to any such action of trespass, detinue, *action of trover*, &c. &c. be, or shall be at the time of any such cause of action, given or accrued, fallen or come, *within the age of twenty-one years*, &c. &c. that then such *person* or *persons* shall be at liberty to bring the same actions, so as they take the same within such times as before is limited, after their *coming to or being of full age*, &c. &c.

The word *person* being singular, must refer to each and every individual coming within any one of the exceptions—to each individual infant. *Persons* unquestionably means more than one individual falling within the same category. Without the use of the singular, the plural *persons* would, as has been judicially held, mean the same thing. There is one view of this Act, in reference to this case, which is conclusive ; it gives to any person " entitled to any such action of trover," the benefit of the exception. If, then, the infant in this case can bring *trover*—is *personally* entitled to the action of trover—it follows that he is, irrespective of any other law, by this Act entitled to the protection extended to infants. That one of two or more tenants in common may bring

trover, was decided by this Court in *Starnes & Paine vs. Quin ;* and here I might rest the question. Our construction of our own Act, is fortified by the construction judicially made of similar Acts in other States.    The South Carolina Statute is substantially our own; instead of person or persons, the Carolina Act has it persons only.    The Supreme Court of that State having under review the *precise question in every particular* made in this record, held as follows :  " It is perfectly clear, from the words of the Act, that in an action by several plaintiffs, (some of whom are or have been minors, and have sued within the time limited, after attaining to maturity,) that the plaintiffs who are or have been minors, and have so sued, cannot be cut off by the Statute, from prosecuting their action; for by the words of the Statute, they are allowed to prosecute their right or title to lands, or any personal action to which they are or may be entitled; and the only question, in reality, would be, whether their disability of non-age would help the adult plaintiff." *Henry and others vs. The Executors of Means,* 2 *Hill's S. C. R.* 333.

The Virginia Statute, also, as it relates to exceptions, is like our own; it has it *person* or *persons.*    In the case of *Doe ex dem. Lewis vs. Barksdale,* its construction in reference to the question now before us, came before the Circuit Court of the United States, *Marshall and Barbour* presiding.    I shall, without comment, transcribe the opinion of Chief Justice *Marshall :* " If this were an original question I should feel much difficulty in so construing the first and second sections of our Act of Limitations, as to exclude one co-heir from the exception in his favor, in consequence of the omission of another to assert his right, within the time to which it is limited.    The proviso of the Act appears to me to be in favor of each individual who comes within it; it is personal; it applies to him who labors under the disability; it is made in consequence of that disability, and it seems to me that the intention of the Act would be defeated by a construction which denies the benefit of the saving to an individual coming within its words, or would give the benefit to an individual not coming within them.

" The counsel for the defendant, contends that the lessors of the plaintiff constitute but one heir, and that as one of them is barred by the Act of Limitations, all are barred.    As one of them cannot be brought within the saving of the Act, those who do come

within it, cannot avail themselves of the saving in their favor. It has already been said that this construction will defeat the intention of the Act. A person whose right is expressly saved for his own benefit, would be deprived of that right by the negligence of another, over whom he had no control. One of the coparceners might have been of full age, when the cause of action accrued, so that as to him, the time would run from the entry of the defendant. The exception, then, in whose favor the exceptions are made, would be of no avail." 2 *Brockenborough's R.* 436.

Apart from our Statute, the authorities, I admit, are in conflict. This case, however, I think, is distinguishable from those which seem to be against our position. The first and leading case on that side of the question is, *Perry vs. Jackson,* 4 *Term R.* 516. That was an action, by the payers of a bill of exchange, who were partners, against the drawers. The defendants pleaded the Statute of Limitations, to which the plaintiffs replied, that when the cause of action accrued to the plaintiffs, one of them was abroad, in parts beyond seas, and out of the kingdom of Great Britain, to-wit: at New York, in America, and that he remained so in parts beyond seas, continually, from thence until October, 1787, when he returned, and that they exhibited their bill within six years after his return. The defendants demurred, generally, to this replication. Non-residence of plaintiffs, by the Statute of *James,* is an exception. The question was, whether the residence of one of the plaintiffs excluded the other, who came within the exception, from the benefit of the exception; and the Court of King's Bench determined that it did, and that all the plaintiffs were barred. Upon the authority of this case, was determined the case of *Marsteller et al. vs. McLean,* (7 *Cranch,* 156,) and these two are the cases relied upon in this argument, and are the basis of some decisions which look the same way, in some of the States.

It is said by Chief Justice *Marshall,* in the case before cited from *Brockenborough,* that these two cases were not decided upon the rights of the parties, but upon the form of the pleadings. " The parties," says Judge *Marshall,* " pleaded jointly, and their plea was good or bad upon the whole. The Court must either have determined that a party not within the exception, was brought within it by being joined with a person entitled to its benefits, or that a person really within it must lose its benefits, by

being joined in a plea with a person not entitled to the protection of the bar. The plea was not good as to the person who could not bring himself within the exception, and being bad in part, was, on technical, legal principles, declared to be bad in the whole." 2 *Brock.* 445. Upon this criticism, the Chief Justice neutralized the authority of the cases from *Term Reports* and *Cranch;* and upon principle, sustained the right of one of the plaintiffs in that case, who was within the exception of the Virginia Statute, to the benefit of the exception. No one could have a better right to know upon what ground the case in Cranch went, than himself, for he was on the Supreme Court Bench, when it was tried. It is apparent, from the opinion of Judge *Story*, in that case, that the judgment was founded on the technical ground stated by Chief Justice *Marshall*, and the authority of that case goes no farther than the grounds of the judgment. It is at the same time true, that Judge *Story*, in *Marsteller vs. McLean*, says : " It seems, however, to be a settled rule, that all the plaintiffs in a suit must be competent to sue ; otherwise, the action cannot be supported; and the case of *Perry vs. Jackson*, cited from 4 *T. R.* 516, decides that a plea of the Statute of Limitations which is good as to one partner, bars them both in a joint action. When once the Statute runs against one of two parties, entitled to a joint action, it operates as a bar to such joint action." This is an obiter of Mr. J. *Story;* I doubt, however, if it is to be taken as more than a recital of what he considered as being ruled in the case in 4 *T. R.* 516. It can certainly go no farther than that case goes ; he does not extend the rule beyond cases similar to that. What is settled, then, in that case ? We have seen what Chief Justice *Marshall* believed was the ground of its judgment. Mr. Justice *O'Neal*, in *Henry and others vs. The Executors of Means*, also gives his view of the two cases referred to. Speaking of the rule settled in those cases, he says : " Generally speaking, it applies to cases in which the parties are *obliged to sue jointly ;* in such cases, it must be admitted by every one, that all must recover or none ; and under the plea of the Statute, if the disability excepted by the Statute applied, generally, to many plaintiffs, as well as to a sole plaintiff, the result would be to save the whole from the Statute." 2 *Hill*, 333. And, as in the case before them, (an action of trover by several plaintiffs, one of whom was within the exception,) the plaintiffs were not *obliged to sue jointly ;*

the Supreme Court of South Carolina held it to be an exception to the rule settled in 4 *T. R.* and 7 *Cranch.* So, if that be the rule, for the same reason we except this case from its operation. That case is very different from this. It seems to me that it was determined, alone, upon those peculiar principles of law, which relate to and regulate partnerships. It was clearly the opinion of Lord *Kenyon*, that the non-resident plaintiff was not within the exception of the Statute of *James*, as to non-residents, *because of the relation which all the plaintiffs bore to each other as partners.* He says : " It is admitted that one partner may do several acts to bind the interest of all; he may release as well as create a debt; he may also, by his acknowledgment, take a case out of the Statute of Limitations; and I see no reason why the same rule should not hold in the present case." And after quoting the excepting clause of the Statute of *James*, which is like ours, he proceeds : " Now, the words of this clause, grammatically speaking, do not apply to the present case; they only extend to cases where the person individually, a single plaintiff, or persons in the plural, where there are several plaintiffs, are not in a situation to protect their interests." 4 *T. R.* 519.

Partners are, in a qualified sense, to be treated as joint tenants of the partnership property, having an interest therein *per my et per tout ;* that is, having an interest therein by the half or moiety, and by all; or, more accurately speaking, they, each of them, have an interest in, and the entire possession, as well of every parcel as of the whole. *Story on Partnership*, 21. 2 *Black. Com.* 182. They are joint tenants without survivorship. The title to property is in the partnership, and in no one member severally, although each has an interest in every portion of it, that interest being in subordination to the claims which exist against the association. Each is the agent of all, and may, by his acts, bind all; and each may, for all legal purposes, use the partnership name. Without pursuing these doctrines farther, from those stated, two legal propositions are deducible :

1st. That to recover a debt due to a partnership, as a general rule, *all must join* in an action; and,

2d. That for this purpose any one may use the partnership name. *Story on Partnership*, 343, 350, 351. *Gow. on Partnership*, ch. 3, §1, *p.* 117, 118, 3 *ed. Collyer on Partnership*, b. 2, ch. 3, §2, *p.* 177, 188 *to* 193, 2 *ed. Idem*, 457.

In this view of partnerships, *one* cannot sue severally, to collect a bill of exchange. Nor, in a suit by the firm, can the interest of any one partner be apportioned. This is demonstrated in the light of the rule, that no one partner is entitled to any share of the property or profits, until the debts of the concern are paid; nor are his personal creditors. If, then, the individual partner has no right to bring his action at law, he is not, according to the language of the Statute, (as Lord *Kenyon* and Mr. J. *O'Neal* held,) entitled to the protection of the exceptions in the Statute. All must sue—the right of action is an unit. If, then, all do sue, and some are barred, and some are by infancy or otherwise, literally within the xceptions, one of two things must follow : either the bar of one will bar all, although some are within the exceptions, or the privilege of those within the exceptions will help those not within them, and prevent the bar of the Statute, as to all. The former of these alternatives was taken by the King's Bench, and agreeably, as I think, to principle. In this view of the case, in 4 *T. R.* it is not to my mind objectionable. The case before me, is not that case ; for these plaintiffs are not partners ; and each has the right to sue for his interest in the property ; and suing jointly, the interest of each can be apportioned.

Directly in support of this judgment are—*Rowe vs. Rowlston*, 2 *Taunt.* 440. *Henry et al. vs. Ex'rs of Means*, 2 *Hill's S. C. R.* 328. *Doe on demise of Lewis et al. vs. Barksdale*, 2 *Brock. R.* 436. See, also, *Angell on Limitations*, 529, '30. *Cullen vs. Motrer, b. S. & R.* 350. 1 *I. C.* 231. 1 *Marsh. K. R.* 39. 3 *Ib.* 362. 3 *Hayw.* (*Tenn. R.*) 113. 4 *Bibb*, (*Ken. R.*) 412. 2 *Murphy,* (*N. C. R.*) 577. 4 *Day,* (*Conn. R.*) 265. *Ibid,* 310.

[5.] The Court farther instructed the Jury, that "If they, (the plaintiffs,) were under age at the time of the removal of the property out of the State, the Statute did not commence running against such of them as were under age, until the property was brought back to the State;" and to this charge also, there is an exception. Upon this assignment, the case must go back. The action of trover is not for the recovery of the property in specie, as was the action of detinue, but for damages. The removal of the property converted, out of the jurisdiction of the State, does not therefore affect at all the plaintiffs' right of action ; possession of the property is not essential to the liability of the defendant; his liability grows out of his conversion. For that, he is liable in

damages. If, then, one converts property belonging to an infant, and sends the property out of the State, upon the infant's arriving at age he is liable to a suit.    The property is liable to conversion, as against the rights of the infant, during his minority.    He has, during his minority, as we have seen, the right to sue; that right recognizes a conversion.    He could not sue, unless there was a conversion.    That right may or may not be asserted during his infancy.    It certainly is not less perfect on account of his arriving at age.    When a conversion has once taken place, it cannot be cured.    A re-delivery of the property will not cure it. Damages for the conversion would still be recoverable, and the return of the property will go in mitigation of damages.    2 *Saund. Plead. & Ev.* 880.    *Countess of Rutland's case,* 1 *Roll. Abr.* 5, *l. pl.* 1.    *Wyatt vs. Blades,* 3 *Camp.* 396.

Clearly, then, the parting with the property to another—the removal of it out of the State—will not cure the conversion.    It would, indeed, be flagrantly unjust, to permit one to appropriate the property of a minor, or an adult, sell it and pocket the money, and then send the owner in a quest, the world over, for it.    Although an infant *may* sue during his minority, for a conversion, yet, he is not bound to sue, at the peril of being barred by the Statute of Limitations.    But when he arrives at age, he must sue at such peril.    His disability is removed, or I should rather say, his privilege ceases, and he is in the position of any other citizen, whose property has been converted.    His right of action has accrued, and there is a person *in esse* liable to be sued. What, then, prevents the Statute from commencing to run?    If the removal of the property out of the State will prevent, it must be by express exception in the Statute, for that is no let upon principle.    But there is no such exception in the Statute; therefore, it will commence to run; and if it does begin to run in favor of the original *tort feasor,* its running enures to the benefit of those who claim under him.    Of course the plaintiff, in such case, will be entitled to the benefit of any other exception in the Statute; as for example, the non-residence of the *tort feasor.*    So, we think that the Court erred in ruling that the Statute did not begin to run, in this case, until the property was returned to the State.    Let the judgment be reversed.