NICHOLAS R. COTTMAN, as Receiver, etc., Respondent, *v.*
WILLIAM R. GRACE et al., Respondents; WILLIAM McILVAINE
et al., Appellants.

| 112 | 299 |
| 154 | 210 |
| 112 | 299 |
| 161 | 140 |

The will of McI. gave his library and the proceeds of his residuary estate
"to the mayor of the city of New York, the president of the New
York Academy of Medicine. the president of the College of Physi-
cians and Surgeons of the city of New York and their successors,
* * * in trust. forever," for the purpose of "the establishment
and maintenance, perpetuation and improvement" of a free library
"without admixture or amalgamation with any other library,
collection or institution." In an action for the construction of the
will, *held,* that the trust attempted to be created was invalid, as an
unlawful suspension of the power of alienation; that the gift was to the
individuals who should from time to time occupy the official positions
named, not to the corporations of which they were officers.
Where the language of a provision in a will is plain and unambiguous,
the courts are not permitted to wrest it from its natural import in order
to save it from condemnation.
*Manice* v. *Manice* (43 N. Y 314, 387) distinguished.

(Argued January 14, 1889; decided January 29, 1889.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made June 28, 1886, which reversed a judgment entered
upon a decision of the court at Special Term and directing
judgment as stated in the order.

This action was brought to obtain a judicial construction of
the will of Robert R. McIlvaine, deceased.

The provisions of the will, so far as they were brought in
question, are as follows :

"*First.* I give and bequeath my library, consisting of a
collection of books, pamphlets, maps, documents, papers, and
all things thereunto appertaining, to the mayor of the city of
New York and the president of the New York Academy of
Medicine, and the president of the College of Physicians and
Surgeons of the city of New York, and their successors, to
have and to hold the same, in trust forever, for the uses and
purposes hereinafter designated ; and I hereby nominate, con-

stitute and appoint the said mayor of the city of New York, and the said president of the New York Academy of Medicine, and the said president of the College of Physicians and Surgeons of the city of New York, and their successors, my trustees for said purposes ; that is to say : I will and direct that my said trustees, with the funds and means hereinafter provided for that purpose, do locate and establish my said library in a building or part of a building to be by them provided for that purpose, and do forever maintain, perpetuate, improve and provide for the same under the name of " The McIlvaine Library," dedicated to my father and mother as a perpetual memorial of the honor, respect, love and esteem which I have ever cherished for them and their memory ; and the uses, purposes and conditions of said trust are, and ever shall be, as follows :

" 1. That the said library shall, at all reasonable hours and days, as my said trustees shall appoint, be open to the public of all classes, for their free use and consultation, without any restrictions or conditions whatever except orderly conduct and good behavior.

" 2. That the said library be forever maintained as a separate, exclusive and distinct institution, to be forever known as ' The McIlvaine Library,' and to be kept free from all admixture or amalgamation with any other library, collection or institution.

" 3. That all newspapers, novels, trivial books and compositions, usually designated as ' trash,' be excluded from said library ; and that no books or documents be purchased for said library, or added thereto, or deposited therein, except standard works relating to the sciences, classics and liberal professions.

" 4. That if either of my nephews or nieces, or grand-nephews or grand-nieces, shall desire to act as the salaried librarian to take charge of and superintend the said library under the direction of my said trustees, my said trustees will give them, or either of them, the preference over all other persons in their appointment of such librarian.

" *Second.* I give devise and bequeath all my property, both real and personal, except my library aforementioned, to Thomas D. Cottman, my executor hereinafter appointed, in

trust for the purposes hereinafter mentioned, with directions and power to sell and dispose of the same, and to distribute the proceeds thereof as follows, that is to say :

" 1. To pay all my funeral expenses and just debts and liabilities.

" 2. To invest such a sum as will produce an annual income of $400, and out of said income of $400 to pay to my nephew William McIlvaine of Ashland county, Ohio, the sum of $100 a year as an annuity during his natural life, and a like sum as an annuity to each of my nieces, Nancy Humphrey of Ashland county, Ohio ; Jane McQuillan of Richmond county, Ohio ; and Sarah Johnson of Crawford county, Ohio ; the principal sums required to produce said annuities to fall into my residuary estate at the death of the annuitant.

" 3. And all the rest, remainder and residue of said proceeds to pay to the trustees of my said library hereinbefore named, for the establishment, maintenance, improvement and perpetuation of my said library forever ; and I do hereby will and direct that my said trustees invest the said proceeds in the purchase or rental of suitable accommodations for my said library, and in United States, New York state and New York city bonds, or on bond and mortgage on improved real estate in the city of New York, not to exceed one-half the assessed value of said real estate, and to use and devote the income of such investments solely for and to the establishment, maintenance, improvement and perpetuation of my said library."

The Special Term held the provisions in reference to "The McIlvaine Library " to be void.

The General Term sustained them on the ground that it was the testator's intent and the will should be construed as making it for the purpose specified to the mayor, aldermen and commonalty of the city of New York, the New York Academy of Medicine and the College of Physicians and Surgeons of the city of New York.

*Thomas Thacher* for appellants. It was the intention of this will to give the books and the residue, in trust, to the

persons holding the offices of mayor of the city of New York, president of the New York Academy of Medicine, and president of the College of Physicians and Surgeons, and not to those corporations themselves, as trustees ; and in determining what the testator intended, the illegality of one intention or the other should have no influence. ( *Van Nostrand* v. *Moore,* 52 N. Y. 12, 18, 21 ; *Dungannon* v. *Smith,* 12 Cl. & Fin. 599 ; *Hardwicke* v. *Douglas,* 7 id. 815 ; *Van Kleeck* v. *Dutch Church,* 20 Wend. 457 ; 6 Paige, 612 ; *Tregonwell* v. *Sydenham,* 3 Dow. 194 ; *Cook* v. *S. Co.,* 3 My. & K. 262 ; *Singer* v. *Carroll,* 3 H. & McH. 333 ; *Wetmore* v. *Parker,* 52 N. Y. 450 ; 3 Pet. 99 ; *Chamberlain* v. *Chamberlain,* 43 N. Y. 424 ; *N. Y. Inst. for the Blind* v. *Howard,* 10 id. 84 ; *Hornbeck* v *A. B. Soc.,* 2 Sand. Ch. 133 ; *Currin* v. *Fanning,* 13 Hun, 458.) The will is void so far as the trust for a library is concerned, because it would suspend the absolute ownership of personal property for more than two lives in being. (*Adams* v. *Perry,* 43 N. Y. 487, 497.) The will as to the library trust is void for the further reason that the beneficiaries are not determined. (*Prichard* v. *Thompson,* 95 N. Y. 76 ; *In re O'Hara,* Id. 416–418 ; *Levy* v. *Levy,* 33 id. 99 ; *White* v. *Howard,* 46 id. 163 ; *Bascom* v. *Albertson,* 34 id. 584 ; *Burrill* v. *Boardman,* 43 id. 254.) The trust under discussion cannot be exempted from the operation of the foregoing well-established rules upon the ground that the purpose is charitable. ( *Williams* v. *Williams,* 4 Seld. 500, 524 ; *Bascom* v. *Albertson,* 34 N. Y. 584 ; *Holmes* v. *Mead,* 52 id. 338 ; *Wetmore* v. *Parker,* id. 450 ; *White* v. *Howard,* 46 id. 163 ; *Holland* v. *Alcock,* 108 id. 312.) The courts have no power to change the provisions of the trust, and seek the accomplishment of a purpose different from that of the testator, however similar it may be thought to be, either by forced construction or otherwise. (*Bascom* v. *Albertson,* 34 N. Y. 584 ; *Holland* v. *Alcock,* 108 id. 312 ; *Leonard* v. *Burr,* 18 id. 100.)

*J. A. McCreery* for plaintiff, respondent. There is no rule of construction requiring the court to interpret a bequest to

or an agreement made with the executive head, or other officer of a corporation by his official title, as a bequest to or an agreement with the individual holding such office. (*N. Y. A. Soc.* v. *Varrick,* 13 Johns. 38 ; *Bayley* v. *O. C. M. Ins. Co.,* 6 Hill, 476 ; *Commercial Bank* v. *French,* 21 Pick. 486 ; *Manice* v. *Manice,* 43 N. Y. 314 ; *Chamberlain* v. *Chamberlain,* 43 id. 427, 437 ; *Thornber* v. *Wilson,* 3 Drewry Ch. 245.) Where either one of two constructions can be given to a clause or provision of a will, the construction which will render the disposition of the estate valid will be accepted in preference to the contrary construction which would render the testator's attempted disposition of his estate nugatory and void. (*Tucker* v. *Tucker,* 5 N. Y. 408 ; *Post* v. *Hover,* 33 id. 593 ; *Robert* v. *Corning,* 89 id. 237.) An educational institution is "a literary incorporated institution within the meaning of section 1 of the act of 1840." (*Adams* v. *Perry,* 43 N. Y. 494.)

*David J. Dean* for the Mayor, etc., respondents. The bequest, though in terms to the mayor of New York, and the president of the New York Academy of Medicine, and the president of the College of Physicians and Surgeons, in trust, is in legal effect a gift or bequest in trust to the corporations themselves. (*Chamberlain* v. *Chamberlain,* 43 N. Y 424, 437 ; *Blind Inst. of N. Y.* v. *How,* 10 id. 84 ; *Currin* v. *Fanning,* 13 Hun, 458 ; *Hornbeck* v. *Am. Bible Soc.,* 2 Sandf. Ch. 133 ; *Effray* v. *Foundling Asylum,* 5 Redf. 557 ; *Atty. Genl.* v. *Tancred,* Amb. 351 ; *Bayley* v. *O. C. M. Ins. Co.,* 6 Hill, 476.) Independent of any statute, corporations, including municipal corporations, may act as trustees in any matter germane to the general purposes of their creation. (1 Perry on Trusts, § 43 ; *McDonogh* v. *Murdock,* 15 How. [U. S.] 367 ; *Vidal* v. *Girard,* 2 id. 127 ; *Sutton Parish* v. *Cole,* 3 Pick. 232 ; *Chambers* v. *St. Louis,* 29 Mo. 543 ; *Philadelphia* v. *Elliot,* 3 Rawle, 170 ; *Phillips Academy* v. *King,* 12 Mass. 546 ; *Girard* v. *Philadelphia,* 7 Wall. 1.) The special duty is imposed upon the city of New York by

its ancient charters to protect property granted for charitable uses. (Dongan Charter, subd. 17; Laws 1873, chap. 335, § 119.) It is further provided by legislative enactment that the city may take property by grant, devise or bequest for purposes of education and the diffusion of knowledge, and may hold such property for such length of time as may be necessary to accomplish such object. (Laws of 1840, chap. 318, § 2; 3 R. S. [7th ed.] 2186; Laws of 1841, chap. 261; *Adams* v. *Perry,* 43 N. Y. 487, 494, 495.) The corporation of the city of New York can act alone in the execution of the trust if the other appointees decline to accept the trust. (*Leggett* v. *Hunter,* 19 N. Y. 445; 25 Barb. 81; *In re Van Wyck,* 1 Barb. Ch. 565; *Crewe* v. *Dicken,* 4 Ves. 97; *In re Bernstein,* 3 Redf. 20; 2 Perry on Trusts, § 502; *Bayley* v. *Cumming,* 10 Irish Eq. 405; *Sands* v. *Nugee,* 8 Simons, 130; *Adams* v. *Taunton,* 5 Madd. Ch. 435; *Belmont* v. *O'Brien,* 12 N. Y. 394; *Rogers* v. *Rogers,* 4 Redf. 521; *Quackenboss* v. *Southwick,* 41 N. Y. 117; *De Peyster* v. *Clendining,* 8 Paige, 295.)

ANDREWS, J. The scheme of the testator, as disclosed by his will, was to devote his entire estate, after payment of his debts, to the establishment and perpetual maintenance of a public library, to be known as "The McIlvaine Library." This scheme he sought to accomplish by constituting trustees, in whom and their successors, indefinitely, all his property should presently or ultimately be vested in trust for the purpose specified. The testator, at his death, owned a library and other personal property and real estate in the states of New York and Ohio. By the first section of the will he gave his library, books, pamphlets, maps, documents, papers and all things thereunto appertaining, "to the mayor of the city of New York and the president of the New York Academy of Medicine, and the president of the College of Physicians and Surgeons of New York, and their successors," to have and to hold the same in trust forever for the uses and purposes of a public library, with special direction that it should be open to the

"public of all classes," for their free use, without any restrictions, except orderly conduct and good behavior; and that "the said library be forever maintained as a separate, exclusive and distinct institution, to be forever known as 'The McIlvaine Library,' and be kept free from all amalgamations or admixtures with any other library, collection or institution." By the second section the testator gave and devised to his executor all his real and personal property, except the said library, and directed him to sell and dispose of the same, and out of the proceeds, *first,* pay his debts and funeral expenses; *second,* invest sufficient to produce an annual income of $400 to be divided among certain life annuitants, the principal sum on their death to fall into his residuary estate; and *third,* to pay over all the rest, residue and remainder of said proceeds to the "trustees of my said library hereinbefore named," who were directed to invest such proceeds in purchasing or renting "suitable accommodations" for said library and in certain specified stocks or securities, and use and devote the income from such investments to its establishment and maintenance.

The validity of the trust attempted to be created in the will is the question in controversy. It is conceded that the will is to be construed as a will of personal property only. It is plain that the direction to the executor to convert the real and personal estate, except the library, into money for the purposes of the will, viz., the payment of debts, the investment of a fund for the payment of annuities, and the residuary gift (which, in terms, is of the proceeds of the sale), operated as an equitable conversion of the real estate into personalty as of the time of the death of the testator. (*Fisher* v. *Banta,* 66 N. Y. 468; *Lent* v. *Howard,* 89 id. 169.) The validity of the trust is assailed on the ground that the scheme of the will transgresses the law of perpetuities in that it attempts to vest in the mayor of the city of New York, the president of the New York Academy of Medicine, and the president of the College of Physicians of the city of New York, and in their successors in these offices, respectively, as individuals, the title

to personal property upon a trust which suspends the absolute ownership for a period not measured by lives, but for all time, in contravention of the statute which prohibits such suspension for a longer period than during the continuance of not more than two lives in being at the death of the testator. (1 R. S. 773, § 1.) It cannot, I think, be doubted that upon the construction of the will claimed by the appellant, viz. : That the individuals who from time to time should occupy the official positions mentioned were constituted the trustees, and not the corporations of which they were officers, the trust attempted to be created is invalid and void. If the law of charitable uses which prevailed in England prior to our revolution, prevailed here, there is not much question but that a gift for a free public library would be regarded as a charitable use, and that the trust in question, although vested in individuals, with a provision for perpetual succession, would not be within the rule of perpetuities, governing legal limitations of real or personal property. As a general rule trusts for charity did not fail either from the incapacity of the designated trustee to take, nor for the indefiniteness of the object, nor were they subject to the statute of perpetuities. (Lewin on Trusts [8th ed.] 20.) But it has been finally settled that the English law of charitable uses never became a part of the law of this state (*Holland* v. *Alcock*, 108 N. Y. 312), and the validity of trusts for objects which were denominated charitable under the English law are in this state governed by the same rules by which the validity of trusts for other purposes are determined. The statute limits the period during which the power of alienation of real property and the absolute ownership of personal property may be suspended. It can no more be suspended beyond the prescribed period by a trust than by a limitation of a strictly legal estate. (*Gilman* v. *Reddington*, 24 N. Y. 9 ; Lewin on Trusts [8th ed.] 97.) The question in either case is whether the suspension is measured by two lives, and in some cases a minority in addition. If continued for a longer time, the trust or the legal estate attempted to be created is void by force of the general statutory rule, unless the particular case

is exempted from its operation by special statutory enactment or by implication, as in case of gifts to corporations authorized to take by gift or devise. The case of *Adams* v. *Perry* (43 N. Y. 487), is a very precise authority that the.trust in question, if construed as vesting the trust estate in the mayor of New York, and the presidents of the two societies named, and their successors as individuals, is unauthorized. Upon that construction the testator undertook to convey his estate to individuals, to hold the same upon the specified trusts in perpetual succession, thereby, during all time, suspending the absolute ownership of the property. Any disposition of the *corpus* of the estate by the trustees, except for reinvestment, would be in contravention of the trust and a breach of their duty. In *Adams* v. *Perry*, the testatrix, whose will was there under consideration, directed her executor to sell her residuary real estate, and invest the proceeds, together with the proceeds of her personal estate, in bonds and mortgages, or other securities, and to pay the annual income to the " Lowville Academy," an incorporated institution, and provided for a succession of trustees through an appointment of successors by the Supreme Court, on the decease of her executors. The court held that the trust was invalid as an unlawful perpetuity, although it was conceded that if the bequest had been made directly to the corporation, it would have been free from objection, as the corporation under its charter was authorized to take by devise for the purposes specified in the trust. In *Williams* v. *Williams* (8 N. Y. 525), it was substantially conceded by Judge Denio (p. 554). that a bequest to individuals and their successors on a perpetual trust, would, except in a case of a charitable trust, be void, as an unlawful suspension of the ownership of personal property, and he sustained the bequest on that distinction, which distinction, however, has in subsequent cases been overruled.

On the remaining question, whether the testator intended to constitute the individuals who, in succession from time to time, should occupy the position of mayor of New York, president of the New York Academy of Medicine, and presi-

dent of the College of Physicians and Surgeons of the city of New York, his trustees, to establish and manage the library, or, as is claimed by the respondents, he intended that the corporations of which such persons should be officers, should take the bequest and administer the trust in their corporate capacity, we entertain no doubt. The language used is inappropriate to express an intention to vest the title to the fund in the corporations themselves, while it is very apt as a designation by description of presumably suitable persons who, in succession, should be the trustees to carry out the purposes of the trust. The testator desired to perpetuate his own name as the founder of a public library, and made careful provision, that it should be separately kept and maintained without, as he says, " admixture or amalgamation with any other library, collection or institution." It was the persons described by their official designation and their successors whom he constituted trustees. The corporations with which they were connected were of unlimited duration and, presumably, could have no successors, but the individuals who should be the chief officers at any time would be succeeded by others. It was certainly quite natural that the testator should believe, in view of the object of the gift, that some, at least, of the persons designated would be willing to assume the position of trustees of the library during their official tenure. This arrangement would be likely to secure a safe and efficient management; while, on the other hand, to impute to the testator the intention to make the three corporations specified the trustees would charge him with the construction of a complex scheme, the administration of which would be attended with much difficulty, and tending to subvert his primary purpose of making the library a separate and independent institution. The three corporations, acting by separate and independent boards, would be a very cumbrous machinery for conducting a public library. The other view of the testator's intention is the natural one, and is in precise accordance with his language, and where the language of a will is plain and unambiguous, we are not permitted to wrest it from its natural

import in order to save a provision from condemnation. The law permits a testator to tie up his property, upon certain prescribed limitations, and one of them forbids a perpetuity; and in interpreting a will, with reference to this condition, " we must do exactly in the same way as if the rule against perpetuity had never been established, or was repealed when the will was made, not varying the construction in order to avoid the effect of that rule, but interpreting the words of the testator wholly without reference to it." PARKE, B., in *Dungannon* v. *Smith* (12 Cl. & Fin. 599). (*Van Nostrand* v. *Moore*, 52 N. Y. 12; *Earl of Hardwicke* v. *Douglas*, 7 Cl. & Fin. 815.)

The respondent cites a class of cases, of which *Manice* v. *Manice* (43 N. Y. 314, 387) is a type, in which it was held that a bequest to " the treasurer, for the time being, of Yale College," was a gift to the college. The intention that the college should be the beneficiary, and not the person who might be treasurer when the will took effect, was very manifest. The bequest was absolute, and not in trust. The selection, by description, of trustees who might be unknown to the testator, where a perpetual trust is created, was natural, but an absolute bequest to unknown persons, by their official description, would be scarcely less than absurd.

We are of opinion, that the Special Term gave the proper construction to the will in question.

This leads to a reversal of the judgment below, and an affirmance of the judgment of the Special Term.

All concur.

Judgment accordingly.