# Lyons, *et al. v.* Bradley.

### *Bill to Construe a Will.*

(Decided Feb. 3, 1910. Rehearing denied June 30, 1910. 53 South. 244.)

1. *Perpetuities; Common Law Rule; Time.*—The period prescribed by the common law or the English law within which each contingent interest must become vested, is a life or lives in being at the date of the conveyance and twenty-one years and nine months thereafter.

2. *Same; Statute; Effect.*—Under section 3417, Code 1907, while in the case of donees, not the wife and children or children only of the donor, the statute lays down a more stringent rule than the common law, in the case of conveyance to the wife and children or children only, the power in the grantor of imposing future limitations may be exercised with greater freedom with respect to the remoteness of the limitation permitted, since alienation of such estates may be suspended during the life or lives in being and during the minority of the issue of the surviving life tenant, and in default of issue becoming of age, during minority of the devisee, though so far as concerns the life or lives in being, it must be exercised in favor of a more restricted class, there being no period in gross of twenty-one years nor any number of years to be added to the lives of the wife and children.

3. *Same; Personal Property.*—The common law is still in force with reference to conveyances of personalty in respect to the creation of perpetuity, as there is no statutes in this state controlling such conveyances.

4. *Same; Vested Estates; Time.*—If an interest vests within the permissible period, it is not obnoxious to the rule against perpetuity though it may end beyond that time.

5. *Same; Nature of Estate; Vested Interest.*—Vested interests are not subject to the rules against perpetuities, the rules being directed against the creation of future contingent interests beyond the time fixed.

[Lyons, et al. v. Bradley.]

6. *Same; Limitations; Applications.*—The courts in applying the rule against perpetuity regard all limitations as void ab initio which are not so framed as to take effect of necessity within the legal period, if at all.

7. *Same; Personal Property; Trusts.*—Where a testator created a trust in personal property, the income to be distributed to the testator's heirs, and the heirs of their bodies per stirpes, that is, to each child living, and to the heirs of each child not living one-sixth of said revenues every six months, the trust to exist for twenty-five years after his death, when the principal and interest should be distributed to the testator's heirs and the heirs of their bodies, and in the event of the death of any one or more of the children without issue, the share or portion of the legacy in trust for them should be distributed to the other beneficiaries in the same proportion, while the remainder over was invalid as offending the rule against perpetuity, it was nevertheless valid for twenty-one years, and would be upheld for that period.

8. *Same; Realty; Perpetuity; Wills; Construction.*—Where a testator created a trust in real estate to last for twenty-five years, or during the life of the widow, if she survives that term, the trustees to pay an annuity of $5,000.00 to the widow out of the income and to distribute the balance annually among the testator's six named children; and in the event of the death of one of testator's children without issue, the net income and profit should be divided equally among the survivors, and in the event of the death of one or more of the children leaving issue, then such issue should thereafter for the remainder of the term of the trust but during the life thereof only take and receive a share that would have gone to their or its parent if living, the intent being that the issue of the children per stirpes succeed to the rights of the deceased parents, but that such succession should not extend beyond the life of such issue, and if such issue should be the grandchild or grandchildren of any of testator's children, then all such should receive for the remaining period of the trust, but during the life only of such grandchild or grandchildren, it or its parent's share, and that at the expiration of the trust, the real estate should go to those persons then entitled to receive the income and profit therefrom, and in the same shares, whether the estate over in remainder so created were vested or contingent, they were liable to be divested by the death of the remaindermen before the expiration of twenty-five years, or the class might be enlarged by the birth of others, so that during the time no person or any number of persons could convey an indefeasible estate in the land, the trust is thereby void as offending the rule against perpetuities prescribed by section 3417, Code 1907.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Lee C. Bradley as executor and trustee against the cestui que trust and donee to have a will construed. From a decree for complainant the respondents appeal. Affirmed in part and reversed and remanded.

[Lyons, et al. v. Bradley.]

JOHN P. TILLMAN, and NATHAN L. MILLER, for appellant. It is conceded by the appellant that the rule against perpetuity applies to devises of both real and personal property; that as to real estate the common law is modified by section 3417, Code 1907, but that the rule as to personal property is not modified by statute. The debatable question as to the devisee and bequest is whether the estates attempted to be created in the trustee can be sustained when the estates in remainder are held to be void. As a general rule a vested interest whether present or in the future is not subject to the rule against perpetuity although there is a qualification. Gray on Rule against Perpetuity, sections 205 and 205a. This general rule will not save the estate in trustees although vested because to uphold the trust estate would violate the intention of the testator in that they are parts of his general scheme of which the future estate is also an essential part, and because the trust upon which the estates were created are invalid, for that while the legal estate become vested the beneficial or equitable estates involve contingency which render them void under the rule against perpetuity.—*In re Johnson's Estate,* 185 Pa. 179; Gray on Perpetuity, secs. 294a and 294b; 21 Beav. 478; *In re Watson v. Weakley.* N. 192; *In re Wise,* 1 Chan. 281.

LEE C. BRADLEY, Pro se. Perpetuities may be said to be grants of property wherein the vesting of an estate or interest is unlawfully postponed.—*Philadelphia v. Girard,* 84 Am. Dec. 470; *Ould v. Washington Hos., etc.,* 95 U. S. 312; 6 Words & Phrases, 5419. In applying the rule against perpetuity it is the settled rule of construction that it is not sufficient that the limitation may take effect within the time required by the rule, but that it must necessarily terminate under any and all

circumstances within the time prescribed by the rules. —*In re Waukley,* 49 Am. St. Rep. 97; *Barnum v. Barnum,* 90 Am. Dec. 88; *Coster v. Llorilard,* 14 Wend. 265; *Ford v. Ford,* 5 Am. St. Rep. 117; *Johnson v. Johnson,* 10 L. R. A. (N. S.) 564; *Bigelow v. Cady,* 63 Am. St. Rep. 230; *Johnson's Estate,* 64 Am. St. Rep. 621. The rule against perpetuity applies to future interests in both realty and personalty whether legal or equitable and to every kind of conveyance or devise and every form, limitation or condition by which such future estate may be created.—22 A. & E. Enc. of Law, 704; Gray on Perpetuities, sec. 411.

SAYRE, J.—This appeal requires a decision as to whether certain items of the last will and testament of Thomas Barton Lyons, deceased, are offensive to the rule against perpetuities, and certain subsidiary questions which will be stated in due course.

We begin with the consideration of the question proposed as affecting the devise of testator's realty within this state. The will contains much detailed direction in respect to the management of this property, but, putting aside those details as unimportant just now, its substance may be stated as follows: Testator devised his real property to Mary A. Lyons, his widow, to Thomas Barton Lyons, his son, and to appellee Bradley, his son-in-law, to hold and control the same for and during the term of 25 years and during the life of his widow, if she survive the term of 25 years, with power and direction, among other things, to collect the income and profits accruing therefrom during the term, and, at intervals not exceeding one year, to distribute the same equally among his six named children after the payment of an annuity of $5,000 to the widow. The annuity is provided for in an independent item of the will, and is

in lieu of the widow's dower and distributive share. The item provides that "the payment of said annuity shall constitute the first charge on said income and profits after the taxes and insurance on said property and the expenses incident to the control and management thereof. Said annuity shall cease at the time of the death or remarriage of my wife, and shall continue during her life and widowhood. In the event that my wife shall elect to claim her dower in real estate or her distributive share of personalty then this provision for her occupation of the present homestead in Virginia shall be void." Item 5 provides as follows: "It is my will and I hereby direct that the revenues and profits from all the real property in the possession of my trustees, whether a part of my entire estate at my death or afterwards acquired, remaining after the payment of the expenses of administering the trust and the annuity provided herein for my wife, shall during the entire term of the trust be divided equally among my daughters and son, viz., Mary L. Fishburne, Ella L. Bradley, Caroline B. Harris, L. Belknap Lea, Thomas Barton Lyons, and Katherine N. Lyons, and such division and the payment thereof shall be made not less often than annually. In the event of the death of any of my daughters or son without issue the net income and profits shall be divided equally among the survivors, but in the event of the death of one or more of my said daughters or son leaving issue, then the issue of such of my daughters or son so dying shall thereafter for the remainder of the period of the trust, but during the life thereof only, take and receive the share thereof which would have gone to its or their parent if living. It being my intent and purpose that the issue of deceased daughters and son shall 'per stirpes' succeed to the rights of the deceased parent, but such succession

shall not exceed beyond the life of such issue, and if any such issue should be grandchild or grandchildren of any of my daughters or son, then all such shall likewise take and receive for the remaining period of the trust but during the life only of such grandchild or grandchildren its or their parent's share. All real property and all interest or estate therein belonging to my estate at the expiration of the trust period as herein fixed, I devise to the persons then entitled to receive the income and profits therefrom, and in the shares that they are so entitled to receive the same as hereinbefore provided." Items 6 and 7 of the will created a trust of testator's personal property to the amount of $400,000. A codicil (No. 2) revoked that provision, and provided as follows: "It is my will that, regarding the trust and trust estate heretofore established and regulated in my will, there shall be the following changes, modifications and extensions, viz.: That there shall be a trust fund established consisting of bonds and stocks of the par value of two hundred and fifty thousand ($250,000.00) dollars to consist of such bonds and stock as may be found in my estate at the time of my death, and sufficient amount to be supplied by my executors to complete said sum of $250,000 and that said sum shall be kept intact in amount by purchase by my trustees hereby appointed, out of the funds coming into their hands or its hands from revenues, or from proceeds of payments made on said bonds on any account. The revenue in interest, dividends or otherwise arising to be distributed to my heirs and the heirs of their bodies by roots—per stirpes—to-wit: to each child living, or heirs of the body of each child, not living, the 1-6 of said revenues every six months. This trust to exist for the period of 25 years after my death, after the expiration of which it shall in principal and interest distribute the volume in trust to the beneficiaries

thereof, to-wit: my heirs and the heirs of their bodies. In the event of the death of any one or more of my children without issue, the share or portion of this legacy in trust shall be distributed and is hereby bequeathed to the other beneficiaries proportioned as above set forth."

Testator, a resident of Alabama, died in 1909, leaving surviving him the six children named in the will; they, with the exception of the youngest daughter, who was unmarried, having children. The provisions of the will which have been noted are attacked as void under the rule against perpetuities. The rule against perpetuities, as it is commonly known, or the rule against the creation of remote contingent limitations, was judge-made law in England, and in its modern English form has been adopted by the courts of this country as expressing a wise public policy. "The avowed object of the rule is to favor commerce and the circulation of property by preventing the right of absolute disposition from being tied up or restrained beyond a certain period, and it applies therefore to every description of property, whether real or personal, to every mode of limitation, and to every kind of interest or mode of enjoyment, whether legal or equitable."—2 Wend. Black, 174. The period described by the common law or English rule within which contingent interests must become vested is a life or lives in being at the date of the conveyance and 21 years afterwards, adding thereto, in the case of an infant in ventre sa mere, sufficient time to cover the ordinary period of gestation. Statutory modifications in this country have been in the direction of increased stringency. The statute of this state is in this language: "Lands may be conveyed to the wife and children, or children only, severally, successively, and jointly; and to the heirs of the body of the survivor, if they come of age, and in default thereof, over; but conveyances to

other than the wife and children, or children only, cannot extend beyond three lives in being at the date of the conveyance, and ten years thereafter."—Code, § 3417. While this statute in its provision for the case in which the succesive donees are not the wife and children or children only of the donor lays down a rule more stringent than that formulated by the judges, in the case of a conveyance to wife and children, or children only, the power in the grantor of imposing future limitations may be exercised with greater freedom in respect to the remoteness of the limitations permitted, for it permits the alienation of estates to be suspended during a life or lives in being and during the minority of the issue of the surviving tenant for life, and, in default of issue coming of age during the minority of the devisee, over; but, so far as concerns the life or lives in being, it must be exercised in favor of a more restricted class of persons. It is to be noted that no period in gross of 21 years nor any number of years is provided to be added to the lives of wife and children. Strangely enough, we have in this state no statute controlling conveyances of personalty in respect to the creation of perpetuities. As to such conveyances the common law is still in force.—22 Am. & Eng. Encyc. 715.

Prof. Gray in his work on the Rule against Perpetuities (section 232 et seq. [2d Ed.]) points out that an interest is not obnoxious to the rule if it vests within the permissible period, although it may end beyond that period. Otherwise every fee-simple estate would be bad. Assuming then, for the argument, that it is competent under the law of this state to create a trust for a term of 25 years, the legal title vested in the trustees immediately upon the testator's death. We will consider whether the limitations over the expiration of the term of 25 years transgresses the bounds fixed by the statute

within which estates may be settled in a prescribed suc-
cession without power of alienation. Vested interests
are not subject to the rule against perpetuities.—Gray,
§ 205 et seq. The rule is directed against the creation
of remote contingent interests—the creation of such in-
terests at a time beyond the limit fixed by the rule. At
the time when the original will was drafted remainders
vested and contingent were determined as to their char-
acter in accordance with the views of the prevailing
opinion in the case of *Smaw v. Young,* 109 Ala. 528, 20
South. 370. Under that case, and antecedent cases in
the same line, the limitations in this will over to testa-
tor's grandchildren surviving the term for years would
have become vested at his death. But the last codicil
was executed and the death of testator occurred since
the adoption of the Code of 1907. The will therefore
speaks as of a date subsequent to the adoption of the
Code. In the Code of 1907 there appeared for the first
time a legislative definition of vested and contingent
remainders which established as the law of this state
the views of McClellan, J., expressed in *Smaw v. Young,*
*supra;* those views being in consonance with the learn-
ing of the common law on the subject. Section 3401 of
the Code defines a vested remainder as one limited to a
certain person at a certain time, or upon the happening
of a certain event, and a contingent remainder as one
limited to an uncertain person, or upon an event
which may or may not happen. This definition
restores the fundamental requisite of certainty as
to the identity of the remainderman in the consti-
tution of a vested remainder to the office it performed
at the common law. Here those who are to take (not
including testator's children) upon the termination
of the estate for years are to be determined by those who
will take on a distribution of income and profits at that

time. They are to be those surviving at each period of distribution. It is impossible to say who will survive. The estate · to survivors is therefore contingent. There is indeed no remainder at all because there is no particular freehold estate to support it. The remainder attempted would, however, be sustained as an executory devise but for its offense against the rule of perpetuities.

But without regard to any change made by section 3401 of the Code in the law of remainders, the provision of the will here under consideration is void for the reason that whether the ultimate estates are contingent under the section referred to, or were vested under the decision in *Smaw v. Young.* In the latter case they are liable to become divested by the death of the remainder-men before the expiration of the period of 25 years, or the class may be enlarged by the birth of others, so that during the term no person nor any number of persons can be said to have the right to convey indefeasible estate in the lands. The courts in applying the rules against perpetuities regard all limitations as void ab initio which are not so framed as to take effect of necessity within the legal period, if at all. In *Ould v. Washington Hospital,* 95 U. S. 303, 24 L. Ed. 450, the Supreme Court of the United States say that: "If the fatal period may elapse before what is to be done ·can be done, the consequence is the same as if such must inevitably be the result. Possibility and certainty have the same effect. Such is the law upon the subject." Prof. Gray states the principle in these words: "It is enough that a contingent event may happen, or even that it will probably happen, within the limits of the rule against perpetuities; if it can possibly happen beyond these limits, an interest conditioned on it is too remote."—Section 214. The devise to granchildren in

this case is not to them nominatim, but to them as a class surviving their immediate ancestors and the term for years. That contingency may happen beyond the limits of the rule, or it may not happen at all. Such a gift is bad although the testator has grandchildren living at his death. To complete this branch of the argument, we quote section 373 of Gray on Perpetuities. He is speaking of the usual case of a gift to a class which violates the rule against perpetuities in that the devise is to such of the grandchildren (or of the children of some living person) as reach an age over 21, say 25: "Assuming then that the devise is not to vest until the remote period, the devise to the whole class is bad; and it is immaterial that some persons are in esse who, should they reach 25, would be entitled to share, for none of them may reach 25, and the whole may ultimately be composed of persons who are not born at the testator's death. This seems to have been first ruled by Lord Kenyon in *Jee v. Audley,* 1 Cox, 324; but the most important case is *Leake v. Robinson,* 2 Mer. 363, in which Sir William Grant, M. R., held that the whole gift was void, and so the law has stood ever since."

We therefore conclude that the limitations over on the trust of the realty as determined by the lapse of the term of 25 years are void.

If the ulterior estates in the land were limited upon the life of the widow in the way of an absolute alternative, this disposition might and doubtless would be sustained by cutting out the unlawful limitation upon the term of years, for that construction would sustain the will in its lawful part without resulting in limitations or in the administration of the trust in a way not contemplated by the testator. But that construction is not open to us. The necessarily deducible purpose of the testator is that the ulterior estates shall not be de-

termined short of 25 years, though the widow may die before that time. To establish a contingency in which the limitations shall take effect at a time short of 25 years would require the making of a will for the testator, and this, of course, the court cannot undertake. Nor can the ulterior estates be saved by the fact that they are limited upon the life of the widow in the event she survives the term of 25 years. True, this is in a sense an alternative limitation upon an estate for life, but the alternative here is not absolute. It is to become operative only in the event the widow survives the term of 25 years, thus rendering all limitations over contingent and affected by the rule for the reason that the term of years must intervene. The limitations over as determined by the life of the widow are also void. In respect to the trust of the stocks and bonds, it is not embarrassed by any reference to the life of the widow, but the term is fixed at 25 years. On considerations heretofore stated, the ulterior estates are void.

A further question is whether the trusts ought to be preserved for any period; the ultimate estates having fallen. A conveyance may not be made effectual to tie up property beyond the statutory rule by being put in the form of a private trust for a term of years. Otherwise, the statute against perpetuities is an idle device. The legal title cannot be entirely dissociated from the private equitable interests the trust serves and supports, nor from the active duties which must be imposed upon the trustees in order to avoid the statute concerning naked trusts. The interests of cestuis que trust may be too remote. "A perpetuity will no more be tolerated when it is covered by a trust than when it displays itself undisguised in the settlement of a legal estate."—1 Perry on Trusts, § 382. In *Norfolks Case*, 1 Vern. 164, it was said that, "if in equity you should come nearer

to a perpetuity than the rules of the common law admit, all men being desirous to continue their estates in their families would settle their estates by way of trust, which might indeed make well for the jurisdiction of the court, but would be destructive to the commonwealth." A private trust cannot be extended beyond the legal limitations of a perpetuity.—*Cottman v. Grace*, 112 N. Y. 299, 19 N. E. 839, 3 L. R. A. 145; 1 Perry on Trusts, § 384. And in New York, where the statute prescribes no term in gross, it is held that a trust for a term of years is void.—*Schettler v. Smith*, 41 N. Y. 328; *Underwood v. Curtis*, 127 N. Y. 523, 28 N. E. 585. So in Michigan, *Farrand v. Petit*, 84 Mich. 671, 48 N. W. 156. The term must be measured by lives.—*Hawley v. James*, 16 Wend. (N. Y.) 123; *Moore v. Moore*, 47 Barb. (N. Y.) 257. In the respect here in point the New York and Michigan statutes are like the branch of the Alabama statute governing the conveyance of lands to wife and children or children only. We need not, however, go to the length of the New York cases at this time.

At one time we were under the impression that the trust of the real property might be differentiated by its provision that the trustees should pay the annuity out of the income and profits, and that it might be sustained as a trust for the security of an annuity during the life or widowhood of Mrs. Lyons notwithstanding its involvement with illegal limitations of the beneficial estate. But it seems now that such effect cannot be given the will without adding something to the intention of the testator as expressed in the will. The annuity is created and secured independently of the trust by being made a first charge upon the income and profits derived from the land. The trust is not essential to the creation or security of the annuity. The testator's purpose that the trust should continue during the life

of his widow, and for 25 years in any event, is clearly expressed. But the annuity charge is not so settled. The widow is to take during her widowhood only. The trust and the life of the annuity charge are not necessarily coterminous. They will be so in one contingency only. Thus, we think, it fails to appear that, apart from the general scheme of tying up the property in connection with an illegal scheme of limitations, the testator would have created the trust for the security of the annuity. There could be no tenable objection to the creation of such a trust, though it is hardly probable that a great estate would have been so tied up for a purpose abundantly secured by other means. It is a rule of common observance that, in the construction of wills, the courts lean in favor of all such valid parts as can be separated from those that are invalid without defeating the general intent of the testator. It is not entirely clear that the recognition of the trust for the life or widowhood of Mrs. Lyons would defeat any purpose of the testator. But the rule intervenes that the court has no authority to travel beyond the language of the will, and its fair intendments to carry into partial effect through one means a scheme which in its totality the will seeks to accomplish by other means. So then, the question is whether, apart from the legal limitations which it supports, and apart from the provision for the payment of the annuity charge, the trust estate can be maintained for 25 years or any lesser term of years.

It is urged on the authority of *Johnston's Estate*, 185 Pa. 179, 39 Atl. 879, 64 Am. St. Rep. 621, that, the limitations over after the term of 25 years being void, the trust estates are void in toto. In that case, to follow in the main the headnote, the testator devised his real estate to a trustee for a period of 75 years, and directed that the trustee should collect rents and profits, and,

after paying for taxes and repairs, should distribute the balance to his children and their legal descendents until the expiration of the 75 years. At the expiration of the term, the trustee was authorized to sell the land, and the proceeds were to be distributed "to and among all my children share and share alike that may be then living, and the legal descendents of any of my said children that may be then dead. The legal descendents of such deceased child or children to take, however, only such share or portion of the said proceeds as their deceased parent would have taken if then living." Held (1) that the particular estate—the term of 75 years given to the trustee—judged of by itself, unrelated to other parts of the will, did not violate the rule against perpetuities; (2) that the gift of the ulterior estate in remainder was a future contigent interest repugnant to the rule against perpetuities, and therefore void for remoteness; (3) that the testator's general scheme was to keep his estate entire for an unlawful period, and, as the particular estate was created for this purpose only, the particular estate must fall with the ulterior estate; (4) that testator died intestate as to his real estate, which accordingly passed at his death to his heirs at law. It will be observed that the conclusion we have reached in respect to the ulterior estates created by the will here in hand is sustained by the ruling in the case cited. Prof. Gray approves the case to that extent. But he disapproves the further conclusion that the trust estate was destroyed in toto by the effort to avoid the rule. The case quotes Lewis on Perpetuities with respect to void ulterior limitations, as follows: "As to prior limitations, the invalidity of a limitation on account of remoteness places all prior gifts in the same situation as if it (the invalid limitation) had been omitted entirely from the disposition scheme. * * * A limitation of

a life estate, or other partial interest, with a remainder expectant upon it, which is void for remoteness, of course remains in statu quo prius; neither receiving enlargement nor suffering diminution." After quoting from *McSorley v. Leary,* 4 Sandf. Ch. (N. Y.) 414, *Haxton v. Corse,* 2 Barb. Ch. (N. Y.) 506, *Darling v. Rogers,* 22 Wend. (N. Y.) 495, and *Thorndike v. Loring,* 15 Gray (Mass.) 391, to the general effect that valid estates prior to void remainders will be preserved unless the invalid estate and those which are valid are so dependent upon each other that they cannot be separated without defeating the general intent of the testator, the opinion ascertains that the only purpose the testator had in connection with the trust he established was to make an invalid gift, that his aim was to control the disposition of his property beyond the period that the law allows, and that the devise was the scheme adopted to accomplish it, and declares the trust void in toto.

The learned work of Prof. Gray to which we have already more than once referred states the effect of a too remote interest on prior limitations in this language: "If future interests created by any instrument are avoided by the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument."— § 247. And at section 418 it is said: "If the main object of an executory trust were to create too remote limitations, so that apart from such object there remained nothing substantial to carry out, it is probable that the whole trust would fall, although there is no case so holding." In section 249a and succeeding sections the commentator calls attention to "four recent cases in which the invalidity for remoteness of a subsequent limitation has been held to destroy prior limita-

tions." He disapproves all of them. Among them is
*Johnston's Estate, supra.* After noting that that case
relied on three New York cases, and on *Thorndike v.
Loring,* he says : "The New York cases were all decided,
not at common law, but under the peculiar provisions of
the New York statutes. The difference between *Thorn-
dike v. Loring* and *Johnston's Estate* is this : In the for-
mer case the income was to be accumulated for 50 years
in order that at the end of that time the accumulations
might be given over,. but the gift over was too remote,
and could never take effect, therefore the object of the
trust wholly failed; but in the latter case the object of
the trust was not solely for the purpose of the remote
gift over—in fact, it had nothing to do with the gift
over—it was created solely to regulate the payment out
of income during the 75 years. It would have effected
its purpose had there been no gift over at all. There is
a series of English cases opposed to *Johnston's Estate,*
and on the whole, with great submission, the decision
seems difficult to maintain."—*Gooding v. Read,* 21 Beav.
478, *Re Watson,* Weakly N. (1892) 192, and *Re Wise,*
1 Ch. 281, are cited. In *Read v. Goodling,* 4 De. G., M.
& G., 510, a trust estate had been limited after a trust
of the income. Complainants were interested in the
first trust. It was held that the ultimate trust was sep-
arable from the trust of the income, and that the latter
was valid, though it had been held in the same case (21
Beav. 478), on the authority of *Leake v. Robinson, su-
pra,* that the ultimate trust was void for the reason no-
ticed by Prof. Gray in section 373 of his work, quoted
above. At section 410a that writer says that a trust
in which it is directed that the annual income shall be
paid over annually to those who on a certain day in each
year answer a particular description—e. g., to those who
shall then be the heirs of the testator—is clearly bad as

a whole because (section 249b, note) the size—propor-
tion—of the shares at each period of distribution could
not be determined until such period which might be aft-
er the limits fixed by the rule against perpetuities. And
at section 410 he holds that so much of the gift as must
take effect, if at all, within the limits of the rule against
perpetuities is on reason and authority not void for re-
moteness; that is, that the trust must be sustained for
a period of 21 years. In reaching the conclusion just
noted, the common-law rule against perpetuities was in
the mind of the commentator. That rule provided for
a term of 21 years in gross, as we have noted. This is
the term for which he says such a trust must be sus-
tained. Referring now to our statute, it will be ob-
served that no reason whatever remains for sustaining
the trust of the real estate, and that it must fail in toto.
The text last referred to does, however, conclude that
the trust of the stocks and bonds, which as we have seen
is governed by the common-law rule, must be sustained
for a period of 21 years. It is urged, however, for ap-
pellees, that the trust estate of the stocks and bonds is
invalid because it is an integral part of a general scheme
of the testator by which he contemplated the withhold-
ing of the property from alienation for a period not
sanctioned by the rule against perpetuities. They quote
*Tilden v. Green,* 130 N. Y. 29, 28 N. E. 880, 14 L. R. A.
33, 27 Am. St. Rep. 487, as follows: "The rule as ap-
plied in all reported cases"—referring to the rule that
where several trusts are created by a will which are in-
dependent of each other, and each complete in itself,
some of which are lawful and others unlawful, and
which may be separated from each other, the illegal
trusts may be cut off and the legal ones permitted to
stand—"recognizes this limitation: That when some
of the trusts in a will are legal and some illegal, if they

are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and the other portions rejected, or if manifest injustice would result from such construction to the beneficiaries, or some of them, then all the trusts must be construed together, and all must be held illegal and must fall." And they quote from a note of Judge Freeman's appended to the report of *Johnston's Estate, supra,* in 185 Pa. 179, 39 Atl. 879, 64 Am. St. Rep. 621, this language: "Perhaps the apparent conflict of authority upon this subject may be reconciled by stating the rule to be that inquiry should be made respecting the main scheme of the testator, and that, if that scheme be found valid, it will not be destroyed by provisions or limitations which offend the law against trusts, or which effect an illegal suspension of the power of alienation. If, on the other hand, this main scheme or purpose is invalid, the whole bequest must fall, though it contain separable provisions or limitations, some of which, if standing alone, might be allowed effect." They quote, also, from *Leake v. Robinson,* the result of which has already been noted. They also rely upon *In re Walkerly,* 108 Cal. 627, 41 Pac. 772, 49 Am. St. Rep. 97. That case was determined under the statute of California, which like the statute of Alabama in respect to conveyances of land to wife and children, or children only, provides no term of years in gross upon which estates may be limited. The statute of that state provides that the power of alienation cannot be suspended beyond lives in being. The trust here condemned was for 25 years. In keeping with the New York cases first above referred to the trust was held void in toto. That case goes far towards establishing the invalidity of the trust in the lands, but does not reach the trust of stocks and bonds. But Judge Freeman in the note to *Johnston's Estate* states the

further rule, which is recognized everyhere.: "While we think it true beyond question that a disposition of property involving a trust must wholly fall when its unlawful part is an essential part of the scheme of the testator, so that it cannot be assumed that he would have made the valid part of the disposition, if he had known that the remainder of it could not be carried into effect, it is equally true that every scheme for the disposition of property, though containing some element of invalidity, may be given effect, in so far as valid, if thereby the general intent of the testator can be realized." The rule here declared sustains the trust of the stocks and bonds for a period of 21 years. The facts are in every material particular—the difference in the terms of years not affecting the application of any principle—the facts of *Johnston's Estate* of which Prof. Gray had to say, as we have shown by previous quotation: "The trust was not solely for the purpose of the remote gift over, in fact, it had nothing to do with the gift over—it was created solely to regulate the payment out of income during the (25) years. It would have effected its purpose had there been no gift over at all." The purpose was to have this trust continue for 25 years. To sustain it for 21 years is plainly to carry into effect the testator's purpose pro tanto by just the means he intended to use. The trust of the stocks and bonds should have been sustained for the term of 21 years.

The decree of the chancellor, so far as it declared the nullity of the trust of stocks and bonds, will be reversed and the cause remanded in order that a decree may be made in accordance with what has here been said.

In other respects the decree will be affirmed.

Affirmed in part and reversed in part and remanded.

DOWDELL, C. J., and McCLELLAN and MAYFIELD, JJ., concur.