While this specially concurring opinion reaches the same result of affirmance of the judgment appealed from, it is important to note at the outset that the discerning reader will perceive a substantial difference between the approach taken by the opinion of the Court, concurred in by five members, *Page 996 
and this special concurrence of the remaining four members of the Court. The difference is a material one, in that the result of affirmance, reached by both approaches under the instant facts, is somewhat fortuitous; that is to say, in different factual settings, the two sets of rationale would necessarily work different results as to the applicability of the Rule Against Perpetuities.
Also, it should be observed that the rationale of the majority accords with that of several of the noted scholars in the oil and gas field whose dislike for the Rule prompts their avowed purpose to weaken its traditional interpretation and application. It is this organic philosophical disagreement that forms the basis of our differences.
We now set forth what we perceive as the correct analysis of the issue presented, keeping in mind that the Rule Against Perpetuities is the current legislative expression of public policy in this State.
 THE EARLES' CONVEYANCES TO INTERNATIONAL PAPER COMPANY
The relevant language of the Earle deeds is as follows:
 "EXCEPTING AND RESERVING unto the said Grantor . . . but only for a period of fifteen (15) years from and after the date of this conveyance, provided that if at the expiration of said period of fifteen (15) years such oil, gas or minerals are being produced from said lands in paying quantities then such reservation shall extend thereafter as long as such oil, gas or minerals continue to be produced from said lands in paying quantities. . . ." (Emphasis added.)
The issue is whether the language of conveyance, or any portion thereof, runs afoul of the oft-quoted, but seldom understood, vestige from the realm of property jurisprudence — the Rule Against Perpetuities. The Rule has been stated to be that no interest sought to be conveyed is valid unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest. Traywick v.Transcontinental Gas Pipe Line Corp., 277 Ala. 366,170 So.2d 802 (1965).
 "`The avowed object of the rule is to favor commerce and the circulation of property by preventing the right of absolute disposition from being tied up or restrained beyond a certain period, and it applies therefore to every description of property, whether real or personal, to every mode of limitation, and to every kind of interest or mode of enjoyment, whether legal or equitable.'" Lyons v. Bradley, 168 Ala. 505, 53 So. 244 (1910), quoting 2 Wend. Black, 174.
The Rule is directed against the creation of remote contingent interests — the creation of such interests at a time beyond the limit fixed by the Rule. Consequently, the Rule has no application to interests which are vested at the time of their creation. Lyons, supra; Traywick, supra. Likewise, the same is true with reversions and possibilities of reverter.
Appellees' contentions as to the applicability vel non of the Rule to the Earles' language of conveyance, may be aptly summarized as follows: (1) the language of conveyance created in the grantees an estate of fee simple determinable, with the Earles retaining a possibility of reverter; (2) the Rule is not applicable to possibilities of reverter, and as a consequence, to the language of the deeds here in question; (3) the fifteen-year period of reservation expressed in the deeds expired, with no evidence of oil, gas or mineral production on the properties at that time; and (4) title to the properties herein now resides solely in International Paper Company in fee simple absolute. We agree with Appellees' latter premise, but under a different rationale.
The estate in one-half of the oil, gas and minerals (which the Earles retained) has been referred to as a "determinable," "base," or "qualified" fee. Farr v. Perkins, 173 Ala. 500,55 So. 923 (1911). As summarized in 31 C.J.S. Estates § 10 (1965), the Earles retained an estate "which is concerned with the happening of a . . . collateral event, in that case leaving the use of the estate free for any purpose, but limiting its existence only by the event contemplated, or to the continuance of the state of affairs contemplated at the time of the grant." This type of fee estate is recognized *Page 997 
in Alabama as "an estate or fee which has a qualification subjoined thereto and which must be determined whenever the qualification annexed to it is at an end." Montgomery v.Montgomery, 236 Ala. 161, 181 So. 92 (1938). See, also, Bradleyv. Eskridge, 361 So.2d 100 (Ala. 1978).
It is equally important, for the sake of our analysis, to recognize the bipartite nature of the fee simple determinable interest retained by the Earles after their conveyance to International Paper Company, to-wit: (1) an expressed reservation for 15 years of rights to one-half the mineral interests in question; and (2) a reservation which, at the end of the 15-year period, would expressly inure to the benefit of the grantors "as long as such oil, gas, or minerals continue to be produced from said lands in paying quantities. . . ."
 THE NATURE OF THE INTEREST GRANTED TO INTERNATIONAL PAPER COMPANY
Appellees argue that because there was no contingency as to whether International Paper Company would enjoy the right to someday come into possession and enjoyment of the reserved mineral interests, this interest was not "executory" or "contingent," but "vested" at the time of its creation. According to Appellees, "possession was certain to occur; it was just a question of when."
Appellants, on the other hand, submit that the interest originally created in International Paper Company was a "springing" executory interest, a freehold said to "spring" out of the grantors at some future date, and into International Paper. Such a nonvested future interest in land is expressly recognized by statute in this State. Code 1975, § 35-4-212.Bradley v. Eskridge, supra; see, also, Brashier v. Burkett,350 So.2d 309 (Ala. 1977).
The preference of our courts for vested, as opposed to contingent, interests, as well as for vesting at the earliest possible time, is well documented. George v. Widemire, 242 Ala. 579, 7 So.2d 269 (1942); Wright v. City of Tuscaloosa, 236 Ala. 374,182 So. 72 (1938). Despite these presumptions, Appellants' characterization of International Paper's interest as a "springing" executory interest, one not vested upon its creation, and therefore subject to application of the Rule Against Perpetuities, is an accurate one.
A future interest is invalid under the Rule unless it is absolutely certain that it must vest within the period allowed by the Rule. Probability of vesting, however great, is not sufficient. Moreover, the certainty of vesting must have existed at the time when the instrument took effect (i.e., at the testator's death in the case of a will; the date of delivery in the case of a deed or trust). It is immaterial that the contingencies actually do occur within the permissible period or actually have occurred when the validity of the instrument is first litigated.
Professor Leach, in his renowned article, "Perpetuities in a Nutshell," 51 Harv.L.Rev. 638, 654 (1938), states: "Where a testator makes a gift to A upon either of two expressed contingencies, one being remote and one not, the gift takes effect if the valid contingency occurs." Stated another way, where an interest is void under the Rule, it is stricken out, and the other interests created in the will or deed or trust instrument take effect as if the void interest had never been written. Such is the doctrine of "severability." An example would be as follows: "T bequeaths the residue of his estate in trust to pay the income to A for life and then to pay theprincipal to such children of A as shall reach the age of 25."
(Emphasis added.) The remainder is void. The italicized portion is ignored. The trustee pays the income to A for life and then holds the principal upon a resulting trust for the next-of-kin of T. Lovering v. Worthington, 106 Mass. 86 (1870); Gray,Perpetuities, §§ 248, 249a (3d ed. 1915).
In the cause before us, the Earles' fee simple determinable reservation of rights to one-half the mineral interests for a term of fifteen years, when juxtaposed with International Paper's "springing" executory interest, is entirely permissible within the realm of tenure prescribed by the Rule (i.e., life in being plus 21 years). The mere fact that the Rule applies, does not in itself ring the death knell for a particular conveyance *Page 998 
or portion thereof. On the other hand, that portion of Frank Earle's conveyance reserving unto himself such rights "as long as such oil, gas or minerals continue to be produced from said lands in paying quantities . . ." (this, at the end of the 15-year period), cannot be afforded such favorable graces. Stated simply, the first part of the Earles' conveyance is valid, the second is not.
It is undisputed that the 15-year period in question expired, with no evidence at that point of any oil, gas or mineral production from any of the lands conveyed. With this in mind, and under our stated rationale, we would hold that such interests in the mineral rights, as now claimed by Appellants, vested completely in International Paper Company at the expiration of the 15-year limitation.
FAULKNER, SHORES and ADAMS, JJ., concur.