# Smith, *et al. v.* Smith.

## *Bill for Partition of Land.*

(Decided Feb. 6, 1908.　　Rehearing denied July 3, 1908.
47 South. 220.)

1. *Wills; Construction; Intention of Testator.*—A cardinal principle in the construction of wills is to ascertain the intent of the testator and give it effect if it is not prohibited by law.

3. *Appeal and Error; Review; Subsequent Appeal; Law of the Case.* —Under section 2840, Code 1896, this cause is not concluded by a former opinion which misconceives the law, and the former opinion may be overruled.

4. *Wills; Construction; Codicil; Effect.*—Where a codicil is made to a will in which is declared a deliberate purpose to change the will, the courts must observe with care the mandates of the codicil embodying the change.

5. *Same; Estate Devised.*—Testatrix made a will to two nephews, devising to them lands in fee; later, she executed a codicil reciting that she did not desire any of the land sold by her nephews, except the pasture land, but that the land should be held and cultivated by them, and that if either of the nephews should die leaving no child or children, surviving, the share of the one so dying should pass to the other, and if both should die without issue, the estate should go over in fee; that if the nephews should die leaving a child or children surviving, their children should take their respective interest in the land. Held, to create a contingent remainder in children not born, and vested remainders in the children as born, subject to divestiture

[Smith, et al. v. Smith.]

by death before the parent, creating a life estate in the nephew. and providing an alternate devise to take the place of that to the children in default of any living at the death of the original devisee.

6. *Same; Survivirship.*—Survivorship relates to the death on which a previous estate terminates, and on which the new estate is limited, and never relates to the death of the testator unless there is no other time to which it can be referred.

7. *Same; "Surviving."*—Where there are limitations to two ·brothers for life, with remainders to their children, and in default of children of either to the survivor or surviving brother, with a limitation over on both dying without children, cross remainders are intended and necessarily implied between the children of the life tenants, the word, "survivor or surviving brother" meaning other or other brother, so that when R. died leaving a child who survived the other brother, C., who died childless, the child of R. was entitled to C.'s share in the estate, the word surviving not being intended to attach a condition referring to the other brother.

(Tyson, C. J., Haralson and McClellan, JJ., dissent.)

APPEAL from Marengo Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Georgia Smith for partition of land, to which Evelyn Hatch Smith and others were made parties respondent. From a decree for complainants, respondents appeal. Reversed and remanded.

W. H. TAYLOE, GUNTER & GUNTER, and W. M. SPENCER, for appellant.

THOMAS E. KNIGHT, E. WARING WILSON, and R. W. WALKER, for appellee.

McCLELLAN, J.—The only question presented on this appeal is one of construction of the will and codicils thereto of Mrs. Bocock. This identical question was passed upon on former appeal, and the views and decision of the court announced in *Smith v. Smith,* 139 Ala. 406, 36 South. 616. A careful reconsideration of the matter leads to the conclusion that the former decision was well rendered, and on that authority the decree appealed from is affirmed.

Affirmed.

[Smith, et al. v. Smith.]

TYSON, C. J., and HARALSON and DOWDELL, JJ., concur. SIMPSON, ANDERSON, and DENSON JJ., dissent.

ANDERSON, J.—I cannot agree to an affirmance of this case upon the conclusion reached by the court upon the former appeal when this case was here before, and which is reported in 139 Ala. 406, 36 South. 616. I do not question the rule as laid down by the authorities quoted and cited in the opinion, as they fix the termination upon the death of the testator, only in the absence of a contrary intent. I think the codicil of the will expresses a contrary intent, and one just the opposite to what was held in the former opinion. "The cardinal rule, and one above all others, for the construction of wills, is to ascertain the intention of the testator and give it effect, if not prohibited by law."—*Campbell v. Weakley,* 121 Ala. 64, 25 South. 694; *Wolffe v. Loeb,* 98 Ala. 426, 13 South. 744. I am not unmindful of section 1020 of the Code of 1896, which says: "Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended." This court, in the case of *Whorton v. Morange,* 62 Ala. 209, in considering this statute and considering its influence upon the construction of wills, speaking through Brickell, C. J., said: "Greater liberality of construction of devises and of wills is necessarily indulged than of deeds and other instruments which transfer the title to property, real or personal. They are often drawn most unskillfully, in the absence of counsel, and are confused or loose and inaccurate in expression. So much depends on the words, arrangement, and circumstances of each particular instrument that it was said more than two centuries ago that cases upon wills had no brothers. The authority of decisions as to the interpretation of wills, so far as they may be applied to

6 R

[Smith, et al. v. Smith.]

the particular instrument, cannot, however, be disre garded without unsettling the titles to property. The object of all construction is to ascertain the intention of the testator, and however inartificially or inaccurately it may be expressed, when ascertained, it must prevail, if not inconsistent with the law." It is said by Blackstone: "By a will alone an estate may pass by mere implication, without any express words to direct its course."—2 Black. 381. The spirit, rather than the mere letter, of the will, the law regards; nor that upon mere conjecture, words can be added which the testator has not used, but from the words actually employed the general intent may be inferred, though it is not particu larly expressed. In *Chapman v. Brown*, 3 Burr. 1634, it was said by Lord Mansfield: "A court of justice may construe a will, and from what is expressed necessarily imply an intent, not particularly specified in words; but we cannot, from arbitrary conjecture, though founded upon the highest degree of probability, add to a will or supply the omission. If words are supplied or rejected by construction, it must always be in support of the manifest intent. The constant object of construction is to attain the intent."

While the foregoing rule has been often quoted by decisions of the land, many of them seem to regard it as an ancient theory unworthy of practical operation, when it has become necessary to vest a fee in the immediate taker and thus defeat the remainder, notwithstanding our statute has thrown every obstacle against the creation of perpetuities. Indeed, this rule has been so often disregarded that professional men, as well as the average layman, have almost reached the conclusion that the entailment of property, even where it does not violate the statute against perpetuities, is almost impossible. The construction of the will in the case at bar is an apt illus-

OF ALABAMA.

tration of the way courts disregard the manifest intent
of a testator, rather than apply that wise and salutary
rule which will give force and effect to his dying wishes.
I fully agree that under the terms of the fifth clause of
the will the nephews, C. A. and Ralph Smith, took as
tenants in common the absolute fee; that is, that such
would have been their estate upon the death of Mrs. Bo-
cock without more. But can it be questioned that the
testatrix did not have the right at any time before her
death to change her will, and thus qualify, limit, or di-
vest entirely the estate previously bequeathed? It was
her property, and she had the right to make any changes
as to the devise of same that may have occurred to her,
any time before her death, as the devisees could not pos-
sibly take until after her death. Acting upon this right,
she executed a codicil, expressing therein her reason and
motive for doing so. After referring to her will, which
she desired to modify and change, she refers to the fifth
clause, wherein she devised 840 acres of land to Cliff A.
and Ralph Smith, and states: "After due consideration,
I modify said devise by saying that I do not wish any of
the lands sold by said devisees, except the pasture land,
but that they be held and cultivated by said devisees
(her two nephews), being satisfied by so doing they will
make themselves useful, independent, and happy mem-
bers of society." Could these nephews sell the land dur-
ing the life of Mrs. Bocock, the testatrix, when they
could not take it until after her death? No. Then how
can it be reasonably held that she did not wish to prevent
a sale after her death, or that she did not wish to divest
the fee simple that was provided for under the original
will? Could language be plainer or motives more pa-
thetic? "I do not wish the land sold by said devisees,
but that they be held and cultivated by said devisees, be-
ing satisfied that by so doing they will make themselves

useful, independent, and happy members of society."
When? There can be but one answer: After the death
of Mrs. Bocock. How could they sell it while she lived?
Moreover, she says: "If either of my said nephews
*  *  * shall die without leaving a child or children
surviving him, the share or interest of the one so dying
shall pass to his surviving brother." Ralph died and
left a child, Ralph Austin. Cliff died, but left no child,
but is survived by Ralph Austin, the son of Ralph. The
codicil further provides: "If my said nieces and neph-
ews shall die leaving a child or children surviving them,
their respective children shall take their respective
shares or interests under the said clause of my will in
fee simple." Who was to take in fee simple? The child
or children that my nephews and nieces left surviving
them. It is clear that the testatrix intended by the codi-
cil to cut the fee simple to the nephews, under the will,
down to a life estate as tenants in common, with remain-
der over to the children of the survivor, in case the other
left no child or children surviving him. In case they
both left no child or children them surviving, then the
land was to go under the general residuary clause of the
will. What sense was there in a provision against a fail-
ure of a taker only during the life of the testatrix? In
case any of them died before she did, all that she had to
do was to add a new codicil, so as to meet all conditions
arising during her lifetime. It amounts to an almost
legal absurdity to say that she did not by this codicil
intend to provide against contingencies arising after her
death, and did not intend to cut down the fee under the
fifth clause of the will.

Again, we find her making provision for a home on the
land for the widow of a nephew. If she intended to de-
vise a fee-simple estate to the nephew, why was it neces-
sary to provide a home for his widow? To hold that Mrs.

[Smith, et al. v. Smith.]

Bocock did not by the codicil intend to entail the land and cut off the fee simple under the will is a distortion of the very intent and purpose for which the codicil was made. Section 3840 of the Code of 1896 says: "The Supreme Court, in deciding each case, when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion at that time, is law, without any regard to such former ruling on the law by it; but the right of third persons, acquired on the faith of the former ruling, shall not be defeated or interfered with by or on account of any subsequent ruling." As the former opinion in this case does not conclude or influence us upon this appeal, and being a misconception of the law as applied to the codicil to Mrs. Bocock's will, the same is hereby overruled.

The chancellor erred in decreeing the widow of Cliff A. Smith any interest in the land other than the pasture land, and the decree of the chancery court is reversed, and one is here rendered denying complainant relief as to tht land other than the pasture land, and the cause is remanded.

DOWDELL, J., recedes from his former conclusion, and concurs with the writer and SIMPSON and DENSON, JJ., in granting the application for rehearing and in adopting the foregoing as the opinion of the court.

TYSON, C. J., and HARALSON and McCLELLAN, JJ., adhere to their former conclusion, and are opposed to granting appellant's application for rehearing, and dissent.

On Appellee's Application for Rehearing.

ANDERSON, J.—We have carefully considered the able and elaborate briefs filed for and against the application for the rehearing made by the appellee, and are

constrained by a sense of duty to deny same. The opinion filed pursued the idea of carrying out the manifest intention of the testatrix, and did not cite the authorities to support what was considered obvious conclusions. Moreover, said opinion was but a protest or dissent by the minority, when originally prepared, and only became the opinion of the majority upon rehearing on the application of the appellant (this being the second application for rehearing) ; one having been made by each side. These considerations, together with the further fact that complaint is made that we proceeded in the teeth of cardinal rules without the citation of authorities, justifies a further discussion of this most important question, wherein we will endeavor to point out the rules and authorities relied on.

The testatrix having made a will, and being some years afterwards dissatisfied with it, declared in a codicil a deliberate purpose to change it, which she at once proceeded to do. This emphasizes the change, and is a caution to the courts to observe with care the mandates of the codicil embodying the change.—*Croizer v. Bray,* 120 N. Y. 374, 24 N. E. 712. The will gave a fee to the two nephews equally. The change is that their several children living at their death shall take their several parts in fee simple. This created contingent remainders for the children until birth, and vested remainders as born, subject to divestiture by death before the parent, and cut down the fee of the nephews to a life estate.— *Smaw v. Young,* 109 Ala. 528, 20 South. 370; *Smith v. Bell,* 6 Pet. (U. S.) 68, 8 L. Ed. 322; *Croxall v. Sherrerd,* 5 Wall. (U. S.) 288, 18 L. Ed. 572. The codicil further proceeds to provide an alternate or substitutionary devise, to take the place of that to the children, in default of any living at the death of the ancestor, by saying, if either nephew died without leaving children

living, the estate should go to the surviving brother, and that, if both so died, the whole estate should go over in fee under the twelfth clause of the will to other persons. We construe these secondary limitations as mere alternate devises, to take the place of the previous contingent remainders to the children, on their failure from lapse or by failure of the condition of their limitation. The authorities for this conclusion are: *In re Pinhorne*, L. R. (1894) 56 Chan. 278, 279; *McLean v. Freeman*, 70 N. Y. 83; *Norris x. Beyea*, 13 N. Y. 273; *Mowatt v. Carow*, 7 Paige (N. Y.) 328, 32 Am. Dec. 641; *Downing v. Marshall*, 23 N. Y. 366, 80 Am. Dec. 290; *Wager v. Wager*, 96 N. Y. 171; *Smaw v. Young*, 109 Ala. 528, 20 South. 370; *Clark v. Cox*, 115 N. C. 93, 20 S. E. 176; *Humphreys v. Howes*, 1 Russ. & M. 639; *Gittings v. McDermott*, 2 Myl. & K. 69. In this case, however, the nephews survived the testatrix and went into possession of their life estates. Then one of them died, leaving a child, one of the appellants in this case, and, of course, the share of the one so dying, which was a vested remainder in the child after birth vested in possession in fee simple, and it is no longer in the case. Afterwards the other brother, Clifford, died leaving no child or children, and the sole question is: To whom does that share go?

The question of the death or time to which the surviving between the brothers relates has been argued with great eagerness by the appellee's counsel, as if it was a doubtful point and involved in this case. If it were involved, we think its solution is indicated by the plain language of the will, and not less so by the authorities. Jarman on Wills (chapter 47) says it has been settled ever since the time of Lord Thurlow.—*Cripps v. Wolcott*, 4 Madd. 11, decided in 1819, and the *Case of Gregson*, 2 De G., J. & Smith, 428, decided in 1864, are the

leading cases.   The rule is that survivorship between devisees never relates to the death of the testator, unless there is no other time to which it can be referred, and that it naturally relates to the death on which a previous estate terminates and on which the new estate is limited.—*King v. Frost,* L. R. 15 App. Cases, 554; *Wordsworth v. Wood,* 1 H. L. C. 129.   The rule is stated in the decision on the former appeal in this case (139 Ala. 406); but a mistake was made in its application in taking the period of distribution to the life tenants as the period of the succession of the survivor.   As we have stated, the question involved in this case is, not the time that the right of the surviving brother accrued, but what is the meaning of the limitation to the "surviving brother"?   And this question we proceed to consider.

The appellants insist "that there are many cases upon the construction of documents (and of wills, particularly) in which the spirit is strong enough to overcome the letter—cases in which it is impossible for a reasonable being, upon a careful perusal of an instrument, not to be satisfied from its contents that a literal, a strict, or an ordinary interpretation given to particular passages would disappoint and defeat the intention with which the instrument, read as a whole, persuades and convinces him that it was framed, and (that) a man so convinced is authorized and bound to construe the writing as-cordingly"; and they cite *Key v. Key,* 4 De G. M. & G. 73, *Sweating v. Pridcaux,* L. R. 2 Ch. Div. 1875-76, 415, *Towns v. Wentworth,* 11 Moore, P. C. 526-543, *Graham v. DeYampert,* 106 Ala. 279, 17 South. 355, and *Smith v. Bell,* 6 Pet. (U. S.) 68, 8 L. Ed. 322, as authorities recognizing this power and duty in the court to carry out the intent of the testator.   And, relying on this obvious truth, the appellants cite a long and unbroken line of authorities where, in just such a limitation as

this stood on the execution of the codicil, "survivor" or "surviving brother" is read as "other" or "other brother" surviving actually or by stirps; this upon the conviction that the intention of the testator, disclosed in the whole will, was that the ultimate limitee (here under the twelfth clause of the will) was to take the property as a whole, and that this and other circumstances disclosed a purpose to keep the property within the stirps of the first limitees as long as any of them existed, before open for the ulterior limitee. The cases themselves do not proceed upon any power in the court to make a will, or to supply what is omitted in a will, but merely to interpret it as it stands in the sense, and with the meaning which it is apparent the testator expressed himself.

We have read the cases cited, and we find none, and are cited to none, which meet or controvert the sound good sense upon which they proceed, and we adopt their conclusion—that in all cases where there are limitations to two for life, with remainders to their children, and in default of children of either to the "survivor" or "surviving brother," with a limitation over on both dying without children, cross-remainders are intended and necessarially implied between the strips of the life tenants, and that "surviving" or surviving brother" must be read "other" or "other brother," and thus that the share of Clifford A. Smith in this case, on his death without children, went, as we have held, to the child of the other brother, though he did not actually survive Clifford. We do not repeat or go over the reasoning of the cases in which we concur, but cite some of the leading authorities in which the above views are expressed:—*Badger v. Gregory*, L. R. 8. Eq. 78; *Waite v. Littlewood*, L. R. 8 Ch. App. 70; *Wake v. Verah*, 2 Ch. D. 348; *Doe v. Wainewright*, 5 Term, 427; *Doe v. Webb*, 1 Taunt. 224; *Lucena*

[Smith, et al. v. Smith.]

*v. Lucena,* L. R. (1877) 7 Ch. D. 255; *Wilmot v. Wilmot,* 8 Ves. 10; *Smith v. Osburne,* 6 H. L. Cases, 375; *Shepard's Heirs v. Shepard's Estate,* 60 Vt. 109, 14 Atl. 536; *Bacon's Estate* (1902) 202 Pa. 535, 52 Atl. 135.

In this case it is impossible not to see from the will, taken as a whole, that the testatrix intended to give the shares of both nephews to the children of either or both as long as there were any to take, and supposed she had done so, and then limited the property over under the twelfth clause only on the failure of children to either of the nephews; and we think she has done so by appropriate language. Moreover, the limitations being between two only, a direction that, on failure as to children by one, the share of that one should go to the "surviving" brother, was a mere description or designation of the person who was to take. It was not intended to attach a condition in the use of "surviving," and it necessarily referred to "the other" brother. As a designation or name of the other brother, "surviving" may be, and should be, eliminated to serve the plain intent, as when a person or thing is designated in several ways, and some of them are wrong.—*Home for Incurables v. Noble,* 172 U. S. 383, 19 Sup. Ct. 226, 43 L. Ed. 486; *Anderson v. Bertley,* L. R. (1902) Ch. D. 939; *Garland v. Beverley,* L. R. (1878) 9 Ch. Div. 212; *Harman v. Dickenson,* 1 B. Ch. Cases, 91.

As to the remaining question about "a home" for appellee on the premises, that is not raised in the bill; and, if it had been, it could not be enforced without putting the appellants in default in some way, which is not done.

Application for rehearing is denied.