## WRIGHT *et al. v.* HILL *et al.,* executors.

1. By the sixth item of his will a testator provided as follows: "All of the other real property I own or may own at my death, exclusive of what has been devised in the foregoing items, I give and devise share and share alike to my seven children [naming them], for the term of their natural lives respectfully [respectively?], with remainder in fee to their surviving lawful issue if any; and if any one shall die without issue, his or her share shall be distributed share and share alike amongst the lawful issue of the others surviving, for and during their natural life." The eighth item was as follows: "I desire and request of my executors and executrix named in the first item of this will to keep all the property mentioned in item 6th undivided until the youngest one of the issue of my sons and daughters mentioned in said item 6 shall become of age." After the testator's death one of the sons died, leaving children surviving him. Some of them are of age. They filed an equitable petition for the purpose of having their shares of the property devised in the sixth item of the will delivered to them. *Held,* that the sixth item of the will created a life-estate in each of the children of the testator respectively, with a contingent remainder over as to such share to the children of each child, and with an executory devise in case any child of the testator should die without issue.

2. Where a son of the testator survived him and died, leaving the present plaintiffs as his lawful children, they took vested indefeasible interests in one seventh of such property. As to such shares there was no active intervening trust; and those of the plaintiffs who were of full age and sui juris were entitled to have the executors assent to the devise as to them and deliver to them their respective interests. (Atkinson, J., dissents from the latter part of this headnote.)

(*a*) The general rule, that, in proceedings for partitioning property among tenants in common, ordinarily there should be a complete partitioning, is subject to some exceptions. It does not affect the right of the devisee, who is entitled to possession of property devised to him, to have his share delivered to him, although there may be other devisees who are not entitled to possession at the same time.

3. Under the rulings made in the preceding headnote, the provisions of the will above quoted did not conflict with the rule against perpetuities.

4. As to the plaintiffs who are of age and sui juris, the action is not premature. (Atkinson, J., dissents.)

(*a*) The allegation that the plaintiffs are tenants in common with the executors and entitled to partition on that basis was demurrable; but it did not require the dismissal of the entire case.

(b) The allegations as to the hostile attitude of the executor, and of the inability of the plaintiffs to ascertain what constituted the residuum devised by the sixth item of the will, were sufficient to withstand the demurrer.

(c) Under the allegations of the petition, all parties in interest should have been made parties to the case.

5. Inasmuch as the court sustained the demurrer on all the grounds thereof and dismissed the case, thus erring as to the substantial merits of the petition, the judgment is reversed, with direction that the case be reinstated; that the demurrer to the allegations of the sixth paragraph of the petition, touching the existence of a tenancy in common between the plaintiffs and the executors, be sustained; that the court allow a reasonable opportunity for the plaintiffs to make necessary parties as herein indicated, and, upon failure so to do, that the action be dismissed for want of proper parties.

AUGUST 12, 1913.

Equitable petition. Before Judge J. B. Park. Baldwin superior court. July 3, 1912.

Maggie Hill Wright and others filed their equitable petition against Nora, Madison, and Stephen Hill, as executors of David B. Hill, alleging in substance as follows: David B. Hill died, testate and owing no debts, on February 27, 1901. After making other bequests he provided, in items six and eight of his will, as follows: "Item 6th. All of the other real property I own or may own at my death, exclusive of what has been devised in the foregoing items, I give and devise share and share alike to my seven children, viz.: Nora, Eula, Inez, Anderson, John, Madison, and Stephen Hill, for the term of their natural lives respectfully [respectively?], with remainder in fee to their surviving lawful issue if any; and if any one shall die without issue, his or her share shall be distributed share and share alike amongst the lawful issue of the others surviving, for and during their natural life." "Item 8th. I desire and request of my executors and executrix named in the first item of this will to keep all the property mentioned in item 6th undivided until the youngest one of the issue of my sons and daughters mentioned in said item 6 shall become of age." The plaintiffs are the surviving lawful issue of Anderson Hill, a son of the testator. Since the death of Anderson Hill, April 19, 1907, none of his lawful issue have died. Plaintiffs refer to the real property devised in item 6th of the will as the residuum, and claim that they as a unit became entitled, upon the death of their father, Anderson Hill, to a vested estate in fee simple in and to an undivided one-seventh interest therein. The executors of the estate bore to

Anderson Hill during his lifetime a hostile attitude, and have borne the same attitude since toward the plaintiffs, who have never been able to learn the exact extent of the residuum of the estate or their portion therein. They know, however, that it consists principally of farming land, and to the best of their information and belief it amounts to from eight to ten thousand acres. The plaintiffs are tenants in common with the executors of the estate of David B. Hill in the land constituting the residuum of the estate; and the petition is brought to have the interest of the plaintiffs partitioned and set apart to them in severalty. The executors have never assented to the vesting of the devises contained in item 6 of the will or any part thereof, and are still clothed with the legal title to the lands devised therein. Plaintiffs allege that item 8 of the will, in which the testator requests of his executors that they keep all the property mentioned in item 6 undivided until the youngest one of the issue of his sons and daughters mentioned should become of age, is illegal, contrary to the law and public policy of·this State, and void, in that it attempts, after devising and creating an absolute estate in fee simple in the plaintiffs, to nullify and destroy such estate by depriving the devisees of the right to the use and enjoyment of it for a stated period, and preventing them from aliening, partitioning, or otherwise disposing of it for said period. Item 8 being illegal and void, the plaintiffs have been entitled, since the death of their father, to have partitioned and set aside to them in severalty their interest in the residuum above referred to. Since the death of the testator, his executors have managed the estate upon the theory that item 8 of the will was legal and valid, and have been withholding from the devisees any possession or use of the residuum, and have excluded them from their right, title, and interest therein. The plaintiffs' father, Anderson Hill, during his lifetime was not allowed the use and possession of his life-estate in the residuum, except as a tenant or renter from the executors and upon the payment of an annual rental, and since his death none of the plaintiffs have been allowed the use or possession of any part of these lands except upon the same terms. Since the death of their father, some of the plaintiffs have been living on a portion of the land in question, but have been required to pay an annual rental by the executors. Besides the rental exacted from the plaintiffs just referred to, the executors have collected from other ten-

ants of these lands a rental equivalent to about $3,000 per annum. This sum has been applied chiefly to making permanent improvements on that part of the residuum on which the executors and their favorite brothers and sisters reside. After these expenditures, the balance remaining was divided among the devisees, each of the plaintiffs receiving a small sum of about $20. Of the residuum of the estate not more than 1,200 acres are in cultivation. Plaintiffs allege that their interest in the residuum is about one thousand acres, and that they have been forbidden and will be prevented, during the pendency of this suit, from using, possessing, or cultivating more than 100 acres, unless the court shall restrain the executors from interfering with the plaintiffs in the use and cultivation of a greater acreage in proportion to their interest. During the pendency of this suit the executors will continue to demand of the plaintiffs the usual annual rental for the use of about 100 acres, and as this exaction is illegal the executors should not be permitted, during the pendency of this suit, to demand of them more than a sufficient amount to pay the taxes on the land which they occupy and cultivate. The children surviving David B. Hill, the testator, were seven. Of this number one died eight days after her father, she not being married. Three others have never married. Two are married and have lawful issue. Another child, Anderson Hill, is the deceased father of the plaintiffs. The youngest of the lawful issue of Anderson Hill was born prior to the death of the testator. At the death of the testator there were surviving him, besides the plaintiffs in this case, four other grandchildren. At the date of filing this suit there are living six other grandchilden, born since the death of the testator. Two grandchildren born since the death of the testator are dead. The prayers of the plaintiffs were as follows: that the executors be required to assent to the vesting in the plaintiffs of the devise contained in item 6 of the will of David B. Hill; that the court decree that item 8 of the will is illegal, contrary to public policy, and void, and that it constitutes no obstacle to the immediate delivery and conveyance to the plaintiffs in severalty of their respective interests in the residuum of the estate; that each of the plaintiffs be decreed to be entitled to an immediate and vested estate in fee simple in an equal undivided sixty-third interest in the residuum of the estate; that a decree be entered fixing the acreage and extent of the residuum and the number of

acres to which each of the plaintiffs is entitled; that commissioners be appointed to survey the residuum and set off by metes and bounds and describe the particular tracts which each of the plaintiffs shall receive, and, upon the confirming of the report of the commissioners, deeds be executed by them to each of the plaintiffs in accordance with the decree; that pending the suit the defendants be enjoined from any acts which may prevent or tend to prevent the plaintiffs from using, possessing, and cultivating an acreage not exceeding 1,000 acres of the lands comprised in the residuum; that pending the suit the executors be temporarily enjoined from demanding of the plaintiffs the payment of any sums as a rental or otherwise, except for their proportionate part of State and county taxes, to be estimated according to the acreage actually occupied by them during the pendency of this suit; for such other and further relief as they may be entitled to, and for process.

The plaintiffs amended their petition as follows: David B. Hill, the testator, was a white man. He was never married to Elvira Hill, who was a woman of color, and neither Elvira Hill nor the children of Elvira and the testator, among whom was the father of the plaintiffs, are his heirs at law. The testator was one of a large family of children, most of whom grew up, married, and reared families. His heirs at law are his brothers and sisters, and their descendants. The testator began living with Elvira Hill about the time of the Civil War and continued to live with her until his death, she surviving him about five years. He and Elvira lived continuously upon the lands constituting the residuum known as the Hill place, which he cultivated and gradually enlarged from time to time. All his children were born, reared, and educated on the Hill place, and were brought up by him to make their living by farming on this land. With one or two exceptions, all the children and descendants of David B. Hill are now living on the Hill place and making their living by its cultivation. At the time of the death of the testator the plaintiffs and their father, Anderson Hill, owned and had nothing except what was given to them by the will, nor at that time did any of the other children or descendants of the testator own much, if anything, except what was given to them by the will. Since the death of the testator no land constituting a part of the residuum of the estate has been sold, encumbered, or otherwise disposed of, and the same remains as it was at the time of the death of the testator.

The defendants demurred to the petition. The court sustained the demurrer and dismissed the case, and the plaintiffs excepted.

*Henry A. Alexander,* for plaintiffs.

*Johnson & Johnson* and *Allen & Pottle,* for defendants.

LUMPKIN, J. (After stating the foregoing facts.) This is a peculiar case and a peculiar will, as will appear from the statement of facts. An illustration may be given of the unusual character of other items beside those directly for consideration. Item three gave certain land to the three daughters, "and to their heirs or lawful issue at their death respectively." It provided that if a named one of the daughters should die, her share should vest in her sisters or their issue; but said nothing as to such a contingency in regard to the others. By the fourth item a brick store was devised to the testator's three daughters and their issue, with a provision that if either of them should die without issue, her share should vest in the survivor or surviving issue. By the seventh item it was declared that the testator desired that the brick store should remain undivided "until the last one of the devisees shall die, and then the said property to be divided share and share alike amongst the lawful issue of the survivors or amongst the lawful issues of the devisees mentioned in items 3 and 4, if any there be." This, however, is only mentioned to show some of the provisions of the will, and the continued use of the words "issues" and "lawful issues," and the want of clearness pervading the instrument.

1. The sixth item was as follows: "All of the other real property I own or may own at my death, exclusive of what has been devised in the foregoing items, I give and devise share and share alike to my seven children, viz.: Nora, Eula, Inez, Anderson, John, Madison, and Stephen Hill, for the term of their natural lives respectfully [respectively?], with remainder in fee to their surviving lawful issue if any; and if any one shall die without issue, his or her share shall be distributed share and share alike amongst the lawful issue of the others surviving, for and during their natural life."

Under the statutory charge, in this State, of the rule in Shelley's case, this created a life-estate in each of the children of the testator, with remainder over to the surviving legitimate children of such child, if any; and if any one (that is, any child of the testator) should die without issue, then as provided. Civil Code of 1910,

§ 3660 (in the last line of which there is a printer's error, making confusion. See Civil Code of 1895, § 3084). The remainder was contingent. The words of survivorship could not be legitimately referred to the death of the testator. Four of his children were unmarried, and had no "lawful issue" to survive him. He could hardly have intended to confine his bounty to the "lawful issue" of the other three children. If so, as he dealt with each child "respectfully" (evidently meaning respectively), although each one of the four who was unmarried when the will was executed might, after the death of the testator, marry and have "lawful issue," the latter would take nothing. Also the provision, in case of the death of any child without issue, that his or her share should be distributed among the lawful issue of the "others surviving" during their natural life, shows that the words of survivorship referred to the death of the life-tenants respectively, and not to that of the testator. Considering the context, we think there is no doubt that a life-estate was created for each child of the testator, with contingent remainder over to the lawful heirs (that is, children) of such child, and with further provision should there be none. This construction accords with the Civil Code (1910), § 3662.

For the present purpose it is immaterial to discuss the question whether the remainder did not vest at all until after the death of each life-tenant, or whether upon the birth of a child to a life-tenant the remainder as to that share vested in it, subject to open to let in after-born children and to divest in case of the death of a child before the death of a life-tenant. Nor need we discuss the peculiar limitation over to other lawful issue "during their natural life," in case of the death of a life-tenant without issue. One who desires to find the silken thread and follow it through the labyrinth of judicial decisions may obtain some aid in the notes to Robertson *v.* Guenther, 25 L. R. A. (N. S.) 887 et seq. (241 Ill. 511, 89 N. E. 689), and Smith *v.* Smith, Id. 1045 et seq. (157 Ala. 79, 47 So. 220). See especially Van Tilburgh *v.* Hollinshead, 14 N. J. Eq. 32; Rountree *v.* Rountree, 26 S. C. 450.

The father of the present plaintiffs having died, leaving them as his lawful issue, as to the one seventh of the estate, which was spoken of as his share (not as descriptive of an absolute estate in him, but of the amount of property or size of the share), the con-

tingency as to them was at an end, and they were the absolute owners of it. This is all they claim in the present suit. No question is raised as to the life-estates or the devises over upon the death of a child of the testator, leaving no issue. Accordingly we do not deal with them; but only with the vested interests of the plaintiffs in a seventh of the residuum.

2. The next question arises upon the eighth item, which is as follows: . "I desire and request of my executors and executrix named in the first item of this will to keep all the property mentioned in item 6th undivided until the youngest one of the issue of my sons and daughters mentioned in said item 6 shall become of age." What does this mean, and what effect has it on the rights of the plaintiffs? As the sixth item created in each of the testator's children a life-estate, with contingent remainder over to their surviving lawful issue, and the eighth item requested that the property be kept undivided until the youngest one of the issue of the sons and daughters should become of age, unless the testator used the words "youngest of the issue of my sons and daughters" in this item in a different sense from that in which the word "issue" was used in the sixth item, the result would be this: The testator created a life-estate for each of his children, with contingent remainder over to their children, but provided that the executors should keep the estate undivided until the youngest of the contingent remaindermen should become of age. He made no express provision for paying the income to the life-tenants or for allowing any use by or benefit to them. As in law possibility of issue is not declared to be at an end until death; and therefore the youngest issue of a child might be born at any time before the death of the last life-tenant, or might then be in ventre sa mere, this provision would seem to create life-estates and then declare that no life-tenant should have his share until after his death. In using the words "the youngest of the issue of my sons and daughters" the testator could hardly have meant the youngest child of a son or daughter living at the execution of the will or at the death of the testator. None of the three daughters were ever married or had children, and one of the sons was unmarried. The context shows that the issue mentioned in that clause referred to the same persons who were described by the word "issue" in creating the contingent remainders. As to the remaindermen, it sought to hold back a di-

36

vision of the estate until the youngest possible child should be born and become of age. In the meantime the contingent remaindermen would become vested remaindermen as to their shares, and in the usual order of nature some of them would probably grow old and die, without ever receiving their fee-simple vested interests. Even if the youngest of the issue of the testator's sons and daughters, who was to become of age before division, referred to the youngest which might be in life when the testator died, one grandchild was then less than two years old; and possession would be postponed, as to the plaintiffs, for some thirteen years after their interest finally vested, and years after most of them were of age. Could the testator legally direct his executors to withhold the possession and enjoyment of the land, as provided in the eighth item? A testator may make such a provision that no estate vests except upon the happening of a certain event. If the contingency is a condition precedent to the vesting of the title or interest, such title or interest of course does not vest until the contingency happens, if the provision does not offend the rule against perpetuities or some other rule of law. But if a fee-simple estate in realty vests, can a testator baldly provide for withholding possession and use from the holder of the estate, unless by interposing a precedent use, or valid trust, or clearly providing for an intestacy as to rents or profits during an intervening time? Some of the text-writers and decisions have stated broadly that a testator may postpone the time for the payment of a legacy or the distribution of his estate. But an examination of the decisions will show that most of them, especially where realty was involved, were in cases where a valid trust or use was interposed. Typical cases of this kind are where a testator provides that his wife shall have the use of land as a home during her widowhood, or until the youngest child shall become of age; or where the land is directed to be held in trust for the education and maintenance of children till the youngest becomes of age, or worked in a certain manner by executors or by the wife and certain children for a support for a certain time, and then divided as directed. *Sheftall* v. *Roberts,* 30 *Ga.* 453; *Trammell* v. *Johnston,* 54 *Ga.* 340; *Vanzant* v. *Bigham,* 76 *Ga.* 759. These cases are cited as illustrative, not exhaustive of all possible instances. There are other cases which did not involve the power of a testator to direct his executors to postpone the division of his

estate or withhold possession, without more; but in some of them the power appears to have been assumed to exist, and the only question raised was upon the construction of the will as to the intention of the testator. *Freeman* v. *Flood,* 16 *Ga.* 528. And some hold flatly that there may be a postponement of enjoyment by a devisee, without more. In the present discussion we omit any reference to charitable trusts, as no such trust is here involved.

Under the English statute of uses, a passive trust in land became executed at once, and the legal title vested in the beneficiary. Under this statute, prior to our first Code (taking effect January 1, 1863), trusts were declared to be executed although the beneficiaries were minors. *Jordan* v. *Thornton,* 7 *Ga.* 517 (a bequest of slaves in trust for a married woman for life, and after her death for her children; after the death of the life usee the trust for the children was held to be executed); *Pope* v. *Tucker,* 23 *Ga.* 484 (a gift by deed in trust for a minor, with limitation over if the minor should die before reaching the age of twenty-one); *Bowman* v. *Long,* 26 *Ga.* 142 (a bequest in trust for a minor); *Walker* v. *Watson,* 32 *Ga.* 264 (conveyance of a slave for the use of a minor having a guardian, with limitation over in the event of the minor dying without child or children; the trust was held to be executed and the guardian entitled to possession); *Milledge* v. *Bryan,* 49 *Ga.* 397.

Our first code contained the following sections, which have been retained in subsequent codes: "Trusts are either executed or executory. In the former, everything has been done by the trustee required to secure the property, or to render certain the interest of the beneficiaries, and all that remains for him to do is to preserve the property and execute the beneficial purposes. In executory trusts, something remains to be done by the trustee, either to secure the property, to ascertain the objects of the trust, or to distribute according to a specified mode, or some other act, to do which requires him to retain the legal estate." "In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title vests in the beneficiary according to the terms and limitations of the trust." Code of 1910, §§ 3736, 3737. In *Askew* v. *Patterson,* 53 *Ga.* 209, the language of the code was treated as so far making a difference that title

might be held by a trustee for a minor, and would not pass to him until he became of age. In *Knorr* v. *Raymond,* 73 *Ga.* 749, the subject was discussed at some length, and this change was recognized. There a will made in 1859 was under consideration. It devised and bequeathed real and personal property to the husband of a granddaughter of the testator, in trust for her life, with direction to convey as she might in writing during her life, or by will, direct; and "in further trust, should she die intestate, to hold said property for the benefit of such persons as may, at the time of her said decease, come under the designation of her next of kin by the statute of distribution at that time in force in the State of Georgia." This was construed to mean her children, and it was held that as each minor became of age the legal title vested in him. On page 773 the judge delivering the opinion said: "The will of Mrs. Telfair expressly authorizes and charges Captain Wetter, as trustee, 'to hold for the benefit' of the next of kin. She does not direct when he shall cease to hold. He holds till some law of force comes in and puts an end to his holding. Upon majority of a beneficiary, the statute of uses, having kept quiet pending the minority made exceptional by the code, comes to the front, and sternly transmutes the trust estate, as to such beneficiary, into a legal remainder." This was in a case where there was an express testamentary trust. In the case before us there was no devise to the executors as trustees. They were not trustees otherwise than as executors. It often happens that executors are clothed by the will with certain powers, and that the will confers upon them a legal title so far as necessary to execute the testator's wishes, where not in conflict with law, but not to render them trustees in any greater sense. *De-Vaughn* v. *McLeroy,* 82 *Ga.* 687, 696 (10 S. E. 211). This will does not in terms create a trust for accumulation; but only a bald direction to withhold division and delivery of devises; and it is unnecessary to enter into a consideration of the law of England prior to the celebrated case of Thellusson *v.* Woodford, 4 Ves. 329 (and see note in Sumner's ed.), or the legislation which followed that decision. Among modern English authorities see 2 Williams on Exrs. (7th Am. ed., 9th Eng. ed.) 710; Josselyn *v.* Josselyn, 9 Sim. 63; Saunders *v.* Vautier, 4 Beavan, 115; Rocke *v.* Rocke, 9 Beavan, 66; Re Young's Settlement, 18 Beavan, 199; In re Trusts of Will of John Colson, 1 Kay, 133; Gosling *v.* Gosling, Johns. 265; In re Jacob's Will, 29 Beavan, 402.

In Gray on Restraints on Alienation, the author discusses many cases, and aptly expresses his conclusions in two paragraphs as follows: "The law has fixed the age of legal responsibility at twenty-one; if that is too young, let it be changed; but the wisdom of allowing individuals to change it at their pleasure is not clear. And, if paternalism is to be introduced into our law, its introduction in this particular class of cases seems to be without the advantages that may exist elsewhere, and to retain only its irritating and demoralizing features" (p. 120). And again: "The true ground is that on which the whole law of property, legal and equitable, is based;—that inalienable rights of property are opposed to the fundamental principles of the common law; that it is against public policy that a man 'should have an estate to live on, but not an estate to pay his debts with,' Tillinghast v. Bradford, 5 R. I. 205, 212, § 179, ante, and should have the benefits of wealth without the responsibilities. The common law has recognized certain classes of persons who may be kept in pupilage, viz., infants, lunatics, married women; but it has held that sane grown men must look out for themselves,—that it is not the function of the law to join in the futile effort to save the foolish and the vicious from the consequences of their own vice and folly. It is wholesome doctrine, fit to produce a manly race, based on sound morality and wise philosophy" (page 242).

In considering the law of this State in connection with the decisions in other jurisdictions, legislation here or in such jurisdictions must not be overlooked. Among other changes which have been made by legislative acts in this State may be mentioned that the old device for avoiding the effect of the statute of uses by limiting a trust upon a trust, and then declaring only the first trust to be executed, has been abolished. Civil Code (1910), § 3738. Married women now hold property in their own names, and are no longer the subjects of trusts by reason of their coverture. Id. §§ 2993, 3007, 6456; *Woodward* v. *Stubbs & Tison,* 102 *Ga.* 187 (29 S. E. 119). Spendthrift trusts, as they are termed, were not built up by the courts. *Gray* v. *Obear,* 54 *Ga.* 231. They are allowed by statute, but only in certain defined cases. Civil Code (1910), § 3729. (There is no hint of any spendthrift trust here and the provision contained in the eighth item of the will is inconsistent with such an idea.) Conditions repugnant to an estate

granted are void. § 3718. The rules of construction as to estates in realty and personalty are the same. § 3556. An executor can not, by capriciously withholding his consent, destroy a legacy. In equity the legatee may compel him to assent. § 3896. From these instances a general tendency in this State both in legislation and construction in the direction of vesting estates both in interest and possession will appear, though the provision for a so-called spend-thrift trust may be a backward step. In *Smith* v. *Dunwoody,* 19 *Ga.* 237, a will created a trust for certain purposes. Some of these purposes would have required the estate to be kept together in perpetuity, and were held illegal; others were legal. It was held that the whole did not fail, but only the illegal part. Lumpkin, J., said (p. 255) : "The only result is, that the trust term will continue in the executors just so long as it may be necessary to accomplish the valid purposes of the will, and not a moment longer." And again (p. 257) : "It is a familiar principle, that the trust term devised to executors can not continue so as to retain the legal estate in them a moment longer than is necessary to enable them to perform the objects of the trust, so far as the same are valid and can be carried into effect, according to the rules of law."

In some jurisdictions it is held that a condition in a conveyance to several grantees against partition is valid, on the ground that partition was not a common-law right, but one arising by statute, and that it could be waived by accepting a deed containing such a provision. Hunt *v.* Wright, 47 N. H. 396 (93 Am. D. 451). On the other hand, where a testatrix gave to each of four children one fifth of her estate, and to the children of her married daughter the other fifth, and provided that none of the real estate should be sold or divided until the testator's youngest child should be twenty-one years old, it was held that the provision against sale or division was void, and it was not necessary to wait to claim shares of the estate until the youngest should reach majority. Moore *v.* Schindebette, 102 Mich. 612 (61 N. W. 62). It may be that a distinction can be drawn between an agreement arising from accepting a deed containing such a provision, and a devise of land in which it is sought in effect to create a passive trust in executors for beneficiaries of full age and with vested estates, and postpone possession, with no valid intervening estate, use, or trust.

However that may be, and whether the authorities can be rec-

onciled or not, under the laws of this State such a passive trust can not be maintained for a person of full age and capable of taking and managing property in his own right, but as to him it becomes executed. The intention of a testator is to be given due weight; but it is not to be regarded as a fetich, superior to the law. Accordingly, under the allegations of the petition, each of the plaintiffs who is of age is entitled to have his or her share of the property devised in the sixth item of the will delivered to him or her, and each of the minor plaintiffs will be entitled to have his or her share delivered to him or her upon becoming of age. See *Freeman v. Phillips,* 113 *Ga.* 589 (38 S. E. 943) ; *Crumpler* v. *Barfield & Wilson Co.,* 114 *Ga.* 570 (40 S. E. 808). In the opinion in the latter case the following excerpt from Pritchard on Wills is quoted approvingly: "The power of alienation is necessarily incident to every estate in fee, and a condition in a devise of lands in fee simple, altogether preventing alienation, is repugnant to the estate and void. No one can create what is in intendment of the law an estate in fee simple and at the same time deprive the owner of those rights and privileges which the law annexes to it." *Parks* v. *Wilkinson,* 134 *Ga.* 14, 18 (67 S. E. 401, 137 Am. St. R. 209) ; Lewis v. Moore, 24 Ontario App. 393; Mims *v.* Machlin, 53 S. C. 6 (30 S. E. 585) ; Fowlkes *v.* Wagoner (Tenn.), 46 S. W. 586; Moore *v.* Schindebette, 102 Mich. 612 (61 N. W. 62) ; *Thompson* v. *Sanders,* 118 *Ga.* 928 (45 S. E. 715).

One ground of the demurrer sets up that there can not be a partial partition. Strictly speaking, what certain of the plaintiffs are entitled to is to have their shares of property devised in the sixth item delivered to them. It is not an ordinary case of partition among cotenants. But even there, in some cases, one may have an allotment set apart to him, and leave the remainder to be held in common. But whether it be called partition or division, the right of the plaintiffs who are of age and sui juris and have vested indefeasible interests as to their shares in one seventh of the estate can not be defeated because there are others who are not in that condition as to their separate interests, in the absence of an intervening use, trust, or partial intestacy as to a term; nor does the possibility of some child of the testator dying without issue furnish ground for withholding the estate now vested.

3. It was contended that the eighth item of the will was viola-

tive of the rule against perpetuities, and void in toto. We are not, however, prepared to so hold. That rule deals rather with the vesting of an estate than the postponement of possession, though it may sometimes have been applied to delaying possession. Professor Gray, in discussing restraints on alienation by postponing possession of a person absolutely entitled to property, says: "If such a direction to pay or convey to a legatee at a period beyond the limit of the rule against perpetuities was, apart from the rule, valid, it would be bad as violating the rule, and the property could never be paid over or conveyed; but as it is invalid, apart from the rule, the objection of remoteness does not apply to it." Gray, Rule against Perpetuities, § 121. In this State effect is given to those limitations which are not too remote. Civil Code (1910), § 3678. As we have seen, there is no trust expressly for accumulation, but only an expression of a desire or request to the executors to keep the property devised in the sixth item undivided until the time specified. It is therefore unnecessary to discuss the validity of trusts for accumulation for persons sui juris, or the extent to which they may be carried.

4. As to the plaintiffs who are of age and sui juris, the action is not premature. It is not a joint suit in ejectment, and the rule that all must recover or none has no application. A partition, so as to give all of the remaindermen, whether vested or contingent, allotments, can not now be had; nor can the plaintiffs who are minors now recover. But the plaintiffs who are of age and sui juris, and have vested indefeasible estates, are entitled, under the allegations of the petition, to their shares of the estate devised under item six.

The allegation that the plaintiffs are tenants in common with the executors, and entitled to partition on that basis, should have been stricken; but it did not require the dismissal of the entire case. The allegations as to the hostile attitude of the executors and the inability of the plaintiffs to ascertain what constituted the residuum, were sufficient to withstand the demurrer. There was no merit in the ground as to not specifying the interest of each legatee. Under the allegations, we think that all of the parties in interest should have been made parties to the case.

5. Inasmuch as the court sustained the demurrer on all of the grounds, we think he erred as to the real substance of the case;

and we reverse the judgment, and direct that the allegations as to the plaintiffs and the executors being tenants in common be stricken from the petition, and that the court allow a reasonable opportunity for the plaintiffs to make necessary parties as herein indicated, before dismissing the action for want thereof.

*Judgment reversed, with direction. All the Justices concur, except Atkinson, J., dissenting.*