[Montgomery, et al. v. Wilson, et al.]

# Montgomery, *et al. v.* Wilson, *et al.*

## *Bill to Quiet Title.*

(Decided November 7, 1913.  66 South. 503.)

1. *Wills; Construction; Intent.*—In interpreting a will, the cardinal rule is to ascertain from the words used the real intent of the testator; and if ascertainable from its words, and not in conflict with the law, the true spirit of the will must prevail.

2. *Same.*—Wills are frequently inartificially drawn, and therefore should receive greater liberality of construction than is given to ordinary legal instruments.

3. *Same; Meaning of Language.*—Where a will was evidently drawn by a person who understood the use and meaning of legal expression, the presumption cannot be indulged that the testator did not intend to use the language employed in its ordinary, well-accepted, technical, legal import.

4. *Same; Favoring Vesting of Estates.*—Under the provisions of section 3396, Code 1907, the law leans to that construction of a doubtful devise which will result in vesting in the devisee a fee simple title to land.

5. *Same; Estates or Interests Created.*—The will examined and held not to give grandchildren a mere life estate, nor to give them an absolute fee simple title, but that it gives them a base fee, subject to be divested upon their death without children or lineal descendants.

6. *Perpetuities; Bequests; Statute.*—Under sections 3416-7, Code 1907, the provisions of this will were valid, as the contingent provisions in favor of the collateral relatives did not extend beyond three lives in being, and the fact that testator did not restrain a sale or disposition of the property, as he might have done, did not affect the validity of such provision.

APPEAL from Lee Law and Equity Court.

Heard before Hon. LUM DUKE.

Bill by L. Penn Montgomery and another against Maud Wilson and others to quiet title to land. Decree for respondents, and complainants appeal. Reversed and rendered.

The following is the will of Thomas L. Penn:

After the usual testamentary statement and the direction as to the paying of debts and burial, contained in items 1 and 2, item 3 is:

14—189

"The remainder of my entire estate, after paying my funeral expenses and debts, I give and bequeath to my two grandchildren, L. Penn Montgomery and Louis Walton Montgomery, share and share alike, to be delivered to and held by them in the manner and at the time and upon the conditions hereinafter named.

"4. I will and direct that all my property of every kind and description of which I may die seised or possessed be held and kept together, and managed and controlled by my executors until April 23, 1916, during which time the net income arising therefrom shall be equally divided and paid annually to my two grandsons, to wit, L. Penn Montgomery and Louis Walton Montgomery.

"5. In the event that either of my said grandsons above mentioned should die and leave no child or children or other lineal descendants surviving him, I give the legacy intended for such grandson so dying to the other of them, to be held and used by him during his natural life, with the remainder over to his child or children or other lineal descendants, should he leave such.

"6. In the event that both of my said grandsons above mentioned should die and leave no child or children or other lineal descendants surviving them, I give the legacies intended to both of my said grandsons so dying to the children of my niece Alice Young, wife of James Young, now residing at Woodville, Green county, Georgia, and to the children of her full brothers, Albert Gorham and Monroe Gorham, and the child or children of any other full brother of said Alice Young, to be divided among said children as follows: One-half of my estate to the children of said Alice Young, share and share alike, and the other half of my estate, to

be divided share and share alike, among the children of the brothers of said Alice Young."

"7. Nominating L. Penn Montgomery and Louis Walton Montgomery as executors and relieving them from giving bond, or from in any manner accounting to any court whatever, directing that the will be proven and recorded in the probate judge's office of Lee county, Alabama, and adding:

"But I direct that as soon as practicable after my death they make two full and complete inventories of my estate, one to each of said executors, and that they make annual settlement between themselves until April 23, 1916, at which time they are directed to divide between themselves all the property then held by them, share and share alike. In making such division, I direct that my real estate be appraised and divided in kind, as near as practicable into two equal parts according to value, and that each of my said grandchildren receive one of said parts, and in case one part should exceed in value the other part, the one receiving the most valuable part shall pay the difference to the other."

R. C. Smith, and Barnes, Denson & Denson, for appellant.

Horace M. Holden, Samuel H. Sibley. and Frank P. Shackleford, for appellee.

De Graffenried, J.—Thomas L. Penn, then an old man, executed his will on January 5, 1911, and his will is before us for construction. The reporter will set out the will, as it is necessary, in order that our meaning may be understood, that this opinion shall be read in connection with the will.

1. The cardinal rule, in interpretating a will, is to ascertain, from the words used in the will, the real intent of the testator, and then to construe the will according to that intent. Wills are frequently inartificially drawn, and for that reason they should receive greater liberality of construction than is to be given to ordinary legal instruments; and the true spirit of a will, when its true spirit is ascertainable from its words and is not in conflict with the law, must control the court which is called upon to construe it.—*Smith v. Smith,* 157 Ala. 79, 47 South. 220, 25 L. R. A. (N. S.) 1045.

2. In this connection we may also add that in cases of doubt, the law leans to that construction of a devise which will result in vesting in the devisee a fee-simple title to land.—Code 1907, § 3396.

"As to the partiality of the law for vested over contingent estates, it is well settled that in *doubtful* cases an interest shall, if possible, be construed to be vested in the first instance, rather than contingent; but, if it cannot be so construed, it shall at least be construed to become vested as early as possible, a principle applicable alike to real and personal property."—*Campbell, Gdn., v. Weakley, Adm'r,* 121 Ala. 64, 25 South. 694.

3 This will was made by the testator in January, 1911, and at that time he yas 79 years old. At that time the appellants were, respectively 24 and 26 years of age. The testator died in May, 1911, and in the fifth clause of his said will he provides that if either of the appellants "should die and leave no child or children or other lineal descendants surviving him, I give the legacy intended for such grandson so dying to the other of them, to be held and used by him during his natural life, with remainder over to his child

or children or other lineal descendants, should he leave such." In the sixth paragraph of his will the testator declares that, if both appellants die without "a child or children or other lineal descendants," then that the property devised shall become the property of appellees. In the seventh paragraph of his will the testator clearly shows that he anticipated an early death —and he did, in fact, live only three or four months after he made the will—because, in that pragraph, he directs that his estate shall be kept together until April 23, 1916, when he directs it to be divided between appellants. It will be thus seen that the testator, when he made his will, expected to be dead and his estate wound up within less than six years from the writing of the will. Appellants were then, as already stated, only 26 and 24 years of age, respectively. The testator evidently intended that, on April 23, 1916, his estate should be divided between his two devisees, and that each should become vested with an estate which was subject to be divested only in one event, viz., death without lawful issue.

We do not think that it can be truthfully said that the testator intended, by the words used in his will, to vest either devisee with a mere life estate in the property devised to such devisee. The portion of the fifth paragraph of the will which we have above quoted cannot, we think, receive a construction other than that the estate which was thereby created vested in the grandson and was to be divested out of such grandson only upon the happening of one event, viz., death without lawful issue of his body. When the testator got ready, in his will, to create or attempt to create a life estate merely, he plainly said so. In the fifth paragraph of his will he says, that if either of the appellants "should die and leave no child or children or

[Montgomery, et al. v. Wilson, et al.]

other lineal descendants surviving him, I give the legacy intended for such grandson so dying to the other of them, to be held and used by him during his natural life, with remainder over," etc.

4. The only remaining question is: Are the limitations over, which the testator made dependent upon the death of appellants or either of them without issue, valid or invalid? If valid, then appellants are possessed of a base fee in the land.—*Carter v. Couch*, 157 Ala. 470, 47 South. 1006, 20 L. R. A. (N. S.) 858; *Edwards and Wife v. Bibb*, 54 Ala. 475. If invalid, the appellants are possessed of a pure and absolute fee-simple title to said property.—*Bibb v. Bibb*, 79 Ala. 437.

The devisees in this will are the grandchildren of the testator, and as to them, under the terms of section 3417 of the Code of 1907, the testator had the power to place, for the two lives in being, the title to the real estate devised to them under lock and key. The provisions of said section 3417 of the Code are impressed upon this title, and, that being true, this will conveys to each devisee an undivided moiety in the lands of the testator, in fee simple, subject to divestiture by death without issue. In other words, the will creates in each devisee a base fee, and if both devisees should die without issue then the respondents take the lands under the terms of this will.—*Carter v. Couch, supra.*

6. That the above is the proper construction to be given this will is shown by section 3416 of the Code of 1907, which is as follows: "Lands may be conveyed, within the limits fixed by law, so as to avoid perpetuities, and subject to such other restrictions as are imposed by this Code, for such terms as the owner thinks proper; and courts are enjoined to give effect in such cases to the intention and meaning of the parties."

[Montgomery, et al. v. Wilson, et al.]

The contingent provision in the will in favor of the respondents does not extend beyond "three lives in being at the date of the conveyance, and ten years thereafter," and, under our statutory system, was such a provision as the testator had a right to make.—*Lyons v. Bradley*, 168 Ala. 505, 53 South. 244; *Ashurst v. Ashurst*, 181 Ala. 401, 61 South. 942.

While, in this will, the testator did not—as in the cases last above cited—attempt to so fetter the title as to prevent the sale by his grandsons of such title as he actually devised to his said grandsons, he did fetter it as to provide that if they both died without issue the respondents should become vested with the absolute fee-simple title to the land devised by the will. This interpretation is due to the language of the will, construed with reference to the above-quoted provisions of section 3417 of the Code, and this plain meaning of the testator, under the above-quoted provisions of section 3416 of the Code, it is our duty to declare and uphold.—*Carter v. Couch, supra.*

7. It is true that under the terms of said section 3417 of the Code of 1907 a grantor or testator may, for the period provided, in and under the conditions imposed by the section, so fetter a title as to prevent a sale or disposition of any sort; and it is also true that, in this will, the testator has made no such attempt. This in no way affects the operation of the section upon the language of this will. The testator in this will, while not exercising all the power over the future disposition of his property which he might, under said section 3417 of the Code, have exercised, has seen proper to exercise a part of that power, and, having done that, the said section upholds the act which it, in terms, expressly authorized.—*Carter v. Couch, supra.*

' 8.. The chancellor, in construing this will, held that appellants took only a life estate in the property devised to them. He did this evidently for the purpose of approximating—not exactly attaining—the purposes of the testator, and, by doing this, to uphold each clause of the will. The trouble with this construction is that the will was evidently drawn by a person who was learned in the use of legal expressions and the words used vest an estate in the appellants which was not to be divested except upon the happening of one event, viz., death without lineal descendants. Upon the happening of that event, then the limitation over, in plain words, creates a life estate. The failure of the testator to create, in express words, a life estate in the first takers under the will, the use by him of apt words creating fee tail estates in the first takers, and the express unequivocal creation of a life estate in the limitations over, in case of the death of one of the first takers without lineal descendants, convinces us that, in the preparation of his will, the testator intended to create in the first takers base fees, and this, as we have already said, the testator had the right to do.

9. We have already adverted to the fact that the will in this case was drawn by a person who understood the use and meaning of legal expressions. We are not, therefore, authorized to indulge the presumption that the testator, in this will, did not intend to use the language employed in the will, in its ordinary, well-accepted, technical legal import. This being true, we must declare the will in accordance with the testator's intention as expressed by him, in the light and meaning of the technical phrases which were employed by him in expressing that intention. In our opinion, the appellants each take a base fee to the property de-

[Hillcrest Land Co. v. Foshee.]

vised to him subject to divestiture by death without lawful issue living at his death, and that, if both grandsons die leaving no lawful issue surviving, then the respondents take the absolute fee-simple title to the lands devised by the will. We do not think that the reasoning of this court in such cases as *Campbell v. Noble,* 110 Ala. 382, 19 South. 28, and *May v. Ritchie,* 65 Ala. 602, has any applicability, under the very language used by the court in those cases, to the case in hand.

This case has been thoroughly considered by the full bench, and the above opinion is intended to express the conclusions of this court, arrived at after a careful consideration of the record by all of the members of this court.

Reversed and rendered. All Justices concur.